413 So.2d 444 (1982)
Frank O'CONNELL, Jr., a Minor, Jo Ann O'Connell and Frank O'Connell, Appellants,
v.
WALT DISNEY WORLD COMPANY, etc., Appellee.
No. 81-118.
District Court of Appeal of Florida, Fifth District.
May 5, 1982.
*445 James H. Webb, Jr., of Maher, Overchuck, Langa & Cate, Orlando, for appellants.
John L. O'Donnell, Jr., and John H. Ward of DeWolf, Ward & Morris, P.A., Orlando, for appellee.
ORFINGER, Judge.
This appeal arises from a summary judgment entered below in favor of defendant. The minor appellant, Frank O'Connell, Jr.,[1] and his parents filed this action against defendant, alleging that the minor was injured during a stampede proximately caused by the negligent acts of appellee's employees in conducting a horseback ride. Appellants alleged that the negligence resulted from the failure to warn appellants of the dangerous nature of the ride, to instruct them about emergency procedures, to provide any safety device for children, and to appropriately train the horses to prevent stampedes. Because we find material issues of fact, we reverse for trial.
After paying the required admission fee, appellants went on a trail ride on horseback at Disney World. Mr. O'Connell signed a release form for Frank, Jr., for his younger daughter, for himself, and for his wife.[2]
During the ride, the horses stampeded and Frank, Jr., was thrown from his horse, suffering severe injuries. His mother testified that prior to the stampede the horse of one of the cowboys conducting the ride was rearing and spinning and brushed against *446 her horse five or six times. She believed that this was the cause of the stampede although she did not actually see or feel her horse brushed immediately before the incident. She testified that she was told by the cowboy that he was "rein-breaking" the horse; that no riding instructions were given before the ride began; and that her son was not provided with a set of short stirrups. She had been told that this was a walking ride and would not have taken the young children on the ride had she been told otherwise.
Mr. O'Connell, the minor's father, testified that there was a horse which kept rearing and spinning; that the cowboys never discussed with him the possible dangers involved in the ride; that the employee who sold him the tickets stated the ride would be at a walking pace; that he signed the "hold harmless" agreement; and that the family went on the ride solely for pleasure.
The employee who had conducted the trail ride denied that he was "rein breaking" a horse on the trail, and that he had ever told anyone he was doing so. He stated that he had never seen any other cowboy rein break a horse on this ride and that such a practice would not be permitted because it would upset the other horses. He testified that he did show the patrons basically how to handle the horses and that appellant did have special short stirrups. He further testified that there was no special training to prevent horses from being startled by animals[3] although he had trained them as thoroughly as possible not to be startled by things in general. However, there was no way to train a horse so that it would not be "spooked" by strange things. He also testified that he was riding in front of Mrs. O'Connell and that her horse ran into his, which caused his horse to jump and startle the horse in front of him; that he wasn't certain about the cause of the stampede and that an examination of the horses and equipment after the incident revealed nothing which would have caused it.
Appellee moved for summary judgment, alleging that based on the pleadings and record there was no genuine issue of material fact and that appellants contractually assumed the risk and agreed to hold appellee harmless and indemnify appellee for any damages. The motion was granted, and final judgment was entered for defendant.
Appellants raise these issues on appeal: (1) that the waiver and hold harmless agreement is not sufficient, as a matter of law, to bar a recovery; (2) even if otherwise sufficient, a waiver and hold harmless agreement signed by a parent on behalf of a minor child is not sufficient, as a matter of law, to bar a recovery by the child based on defendant's negligence; and (3) that there was no express assumption of risk by the minor in riding the horse such as would bar his recovery for defendant's negligence proximately causing the minor's injury.
Although there is a distinction in definition between an exculpatory clause and an indemnity clause in a contract, they both attempt to shift ultimate responsibility for negligent injury, and so are generally construed by the same principles of law. An exculpatory clause purports to deny an injured party the right to recover damages from the person negligently causing his injury. An indemnification clause attempts to shift the responsibility for the payment of damages to someone other than the negligent party (sometimes back to the injured party, thus producing the same result as an exculpatory provision).
While exculpatory clauses are enforceable, they are looked upon with disfavor; and any attempt to limit one's liability for his own negligent act will not be inferred from an agreement unless such intention is expressed in clear and unequivocal terms. Tout v. Hartford Accident and Indemnity Company, 390 So.2d 155 (Fla.3d *447 DCA 1980); Ivey Plants, Inc. v. F.M.C. Corporation, 282 So.2d 205 (Fla. 4th DCA 1973), cert. denied, 289 So.2d 731 (Fla. 1974). Similarly, unless an indemnity agreement clearly and unequivocally provides for indemnification for the indemnitee's own negligence, that obligation will not be inferred. Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equipment Co., 374 So.2d 487 (Fla. 1979).
In the agreement here, there is a complete absence of any language indicating the intent to either release or indemnify the defendant for its own negligence, so we will not read that language into it. Thus, as to these issues, the agreement did not, as a matter of law, bar plaintiffs' recovery. Therefore, it is not necessary for us to decide whether the parent could waive the minor child's right to recovery, or agree on behalf of the minor, to the indemnification provision here.
We therefore address the issue of assumption of risk. Appellee characterizes the issue in the case as whether or not appellant assumed the risks of horseback riding either by express contract or by participation in a sport.
An express, contractual agreement to assume the risk of injury or loss is covered by the same principles which apply to any other type of exculpatory clause. Tout. In order to be enforceable, the agreement must unambiguously indicate which risks are assumed and will not be interpreted to include losses resulting from the defendant's negligence unless it is clear that the plaintiff so intended. Tout, citing Ivey Plants; Restatement of Torts, Second § 496B, comment d.[4] Assuming again the right of the parent to contractually assume the risk for the child, a point not decided here, the only risks referred to in the agreement here were those "inherent in horseback riding." Therefore, this provision would not bar recovery for injuries resulting from defendant's negligence because it is not so expressly stated.[5]
Appellee argues that there is no negligence when an activity has been made as safe as possible. Appellee's employee testified that the only certain way to prevent a horse from being startled, would be to never have the ride at all. However, the conflicting evidence that no instructions were given to the riders, that the customary short stirrups were not used on the minor's horse, and that rein-breaking took place which could upset the horses, raises a factual question as to whether the ride was made as safe as possible.
Appellee also characterizes appellants' participation in the horseback ride as analogous to participation in a contact sport, relying on Strickland v. Roberts, 382 So.2d 1338 (Fla. 5th DCA 1980). In Strickland, the court upheld a summary judgment for defendant because plaintiff was engaging in an "aberrant" form of waterskiing, whereby he attempted to swing as close as possible to a dock and still miss it. A comparison of Strickland to the instant case appears to be inapposite, however, in that here there is no indication that appellant was intentionally engaging in an unusual or aberrant form of horseback riding. Also, the Strickland court actually held that the defendant's action was not the proximate cause of the plaintiff's injury.
We reiterate the principles of law applicable to summary judgment proceedings. A summary judgment should not be granted unless, construing all the evidence most favorably to the non-moving party, there is no issue of material fact and the movant is entitled to judgment as a matter *448 of law. Holl v. Talcott, 191 So.2d 40 (Fla. 1966). The movant has the burden of conclusively proving that there is no triable issue of fact and the burden does not shift to the opposing party until the movant has met that burden.
If we view appellee's position to be that because there is an implied assumption of risk that horses will break and run when one engages in that activity and, therefore, appellants are barred from recovery even though appellee may have been negligent, it has already been determined that the affirmative defense of implied assumption of risk has been merged into the defense of contributory negligence and the principles of comparative negligence apply. Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977). We may also view appellee's position to be that there is an express assumption of risk which arises from engaging in horseback riding.[6] While we do not view horseback riding as a "contact" sport, there are risks inherent in any sport. However, before it can be said that one expressly assumes a risk, it must be shown that the particular risk was known or should have been known and appreciated by the person injured:
The doctrine of assumption of risk cannot be invoked unless it is clearly shown that the particular risk or danger shall have been known and appreciated by the person injured.
De Pew v. Sylvia, 265 So.2d 75, 76 (Fla. 1st DCA 1972). See also Bartholf v. Baker, 71 So.2d 480 (Fla. 1954); Restatement of the Law of Torts, Second, § 496D. This court has recognized the viability of the defense of express assumption of risk as a bar to recovery in sport situations,[7] but in those cases it was clear that the injured person fully appreciated the danger of the acts he was performing.
Furthermore, characterization of participation in contact or competitive sports as express assumption of risk appears to be based on the theory that plaintiff expressly and voluntarily consents to subject himself to actions by other persons which in other contexts would be tortious. Annot., 77 A.L.R.3d 1300, § 2; Restatement of Torts, Second, § 50, comment b. See Blackburn, 348 So.2d at 290. The risks to which the player subjects himself are circumscribed by the rules of the game, and, at least in some cases, a player who acts outside those rules and causes injury may be liable for the resulting injuries. Nabozny v. Barnhill, 31 Ill. App.3d 212, 334 N.E.2d 258 (1975).
For an express assumption of risk to be valid  whether it arises from a contract or from voluntary participation in an activity such as a sport  it must be clear that the plaintiff understood that he was assuming the risk of the particular conduct by the defendant which caused his injuries. Restatement of Torts, Second, § 496B, comment d. No agreement to assume risks not known to the plaintiff will be inferred unless clearly intended. Restatement of Torts, Second, § 496 D, comment a. Therefore, in order to find a valid contractual assumption of risk in the instant case, it must be shown that appellant subjectively understood the "risks inherent in horseback riding" and actually intended to assume those risks.
The theory which more appropriately applies to the instant case, is that of "primary  implied assumption of risk." Blackburn, 348 So.2d at 291. This term was used to describe situations where there are certain risks which are inherent and unavoidable in a particular activity and, therefore, the defendant has no duty to protect the plaintiff from those risks and simply is not negligent. Id.; Meistrich v. Casino Areana Attractions, Inc., 31 N.J. 44, 155 A.2d 90 (1959) [defendant skating rink operator liable where ice was improperly prepared, causing *449 plaintiff to fall]. If, however, the defendant's actions increase or add new risks not normally inherent in the activity, a duty arises and he may be found negligent. Blackburn; Meistrich. This is the theory on which plaintiffs rely.
Appellee did not carry its burden of establishing, for summary judgment purposes, that appellants fully understood the risks and dangers involved in riding a horse. Neither did appellee carry the burden of demonstrating that appellants understood and agreed to assume the risk of appellee's negligence in conducting the ride. There is evidence in the record from which a jury could conclude that the injury was caused, not by any inherent characteristic of the horses, but by negligent conduct of appellee's employees, so it was not proper to conclude the action by summary judgment. We cannot say, as a matter of law, that a nine-year old child with little or no experience as a rider could realize and appreciate the risk of a stampede if he participated in a walking trail ride. See Dee v. Parish, 160 Tex. 171, 327 S.W.2d 449 (1959).
In the face of the evidence here, the appellants could not be found, as a matter of law, to have understood and appreciated the danger of the minor plaintiff being thrown from a horse during a stampede. The evidence in the record that appellants were assured that this would be a walking ride under close supervision and the conflicting evidence to the effect that negligent conduct on the part of appellee's employees caused the horses to break, precludes the entry of summary judgment.
The summary final judgment in favor of appellee is reversed, and the cause is remanded for further proceedings not inconsistent herewith.
REVERSED and REMANDED.
DAUKSCH, C.J., concurs.
FRANK D. UPCHURCH, Jr., J., dissents with opinion.
FRANK D. UPCHURCH, Jr., J., dissenting:
I believe the release is sufficient. It was clearly and unequivocally intended to limit appellee's liability. As there was no suggestion that the child's injuries were the result of intentional acts, appellee's only possible liability would have been for the negligent acts of its employees. The waiver referred to "any claims or causes of actions." The "hold harmless" clause refers to "any and all claims." While it is possible to be more specific, the language used certainly requires no inference. I would affirm.
NOTES
[1] Nine years old at the time of the accident giving rise to this suit.
[2] The release signed on behalf of the minor appellant says, in pertinent part:

I consent to the renting of a horse from Walt Disney World Co. by Frankie, a minor, and to his/her assumption of the risks inherent in horseback riding. I agree, personally and on his/her behalf, to waive any claims or causes of action which he/she or I may now or hereafter have against Walt Disney World Co. arising out of any injuries he/she may sustain as a result of that horseback riding, and I will hold Walt Disney World Co. harmless against any and all claims resulting from such injuries.
.....
The releases signed on behalf of the individual parents are worded essentially the same, except that they omit the reference to a minor.
[3] There was a statement by one of the employees that an armadillo had spooked the horses, but the employee who had heard this also testified that she knew of no one who had seen an armadillo prior to the accident, nor had she ever heard of an armadillo spooking these horses.
[4] Where an agreement is drawn by the defendant and passively accepted by the plaintiff, the terms will be strictly construed against the defendant. Restatement of Torts, Second, § 496B, comment d.
[5] Appellee also asserts that any negligence on the part of appellee in causing the stampede is not material because appellant did not specifically allege in the complaint that the cause of the stampede was the cause of the injury. This argument is specious, since appellant alleged in the complaint that he was injured when thrown from a horse during a stampede and that the negligent acts of appellee's employees caused his injuries.
[6] Included within the definition of express assumption of risk are express contracts not to sue for injury or loss which may thereafter be occasioned by the covenantee's negligence, as well as situations in which actual consent exists such as where one voluntarily participates in a contact sport. Blackburn v. Dorta, 348 So.2d 287, 290 (Fla. 1977).
[7] Kuehner v. Green, 406 So.2d 1160 (Fla. 5th DCA 1981); Strickland v. Roberts 382 So.2d 1338 (Fla. 5th DCA 1980).