570 So.2d 436 (1990)
HARDAGE ENTERPRISES, INC., Appellant,
v.
FIDESYS CORPORATION, N.V., Etc., Appellee.
No. 89-2245.
District Court of Appeal of Florida, Fifth District.
November 29, 1990.
Lilburn R. Railey, III and Mary M. Wills of Smith, Mackinnon & Mathews, P.A., Orlando, for appellant.
Terrence William Ackert, Winter Park, for appellee.
COBB, Judge.
This appeal concerns the validity of a declaratory judgment finding that a mutual release executed by the appellant, Hardage Enterprises, Inc., and the appellee, Fidesys Corporation, N.V., was invalid and unenforceable as to any acts of negligence.
In September of 1984, Hardage and Fidesys entered into a construction management agreement with Fidesys as owner and Hardage as construction manager of a hotel complex located in Osceola County, Florida. After construction was completed, a dispute arose between Fidesys and the general contractor concerning alleged construction deficiencies. The dispute was submitted to arbitration before the American Arbitration Association. While the arbitration was proceeding, Hardage and Fidesys entered into a mutual release concerning their rights and obligations.
At the time of the release, Hardage had completed all work on the project. The release stated that
... in consideration of the premises and the mutual promises and covenants herein contained and the sum of $19,308.91 ... each of the parties ... releases and forever discharges the other ... of and from any and all claims, demands, damages, actions, causes of action, or suits in equity, of whatsoever kind or nature, whether heretofore or hereafter accruing, or whether now known or not known *437 to the parties, for or because of any matter or thing done, omitted, or suffered to be done by either of such parties prior to, and including the date hereof, and in any way directly or indirectly arising out of the construction management agreement between the parties and all of the transactions and occurrences above-described.
In 1988, Fidesys filed an action for declaratory relief, seeking a declaration regarding the validity and enforceability of the release. Hardage filed its answer and affirmative defenses, asserting that Fidesys' action was barred by the existence of the release and that the complaint failed to state a cause of action for declaratory relief. Thereafter, Fidesys filed a motion for judgment on the pleadings and a motion for summary judgment. Fidesys' affidavit in support of its motion for summary judgment, alleged that Hardage committed negligence while it was construction manager, but that Fidesys did not become aware of the negligence until after the release. It also alleged that the question of the negligence of Hardage "was never addressed or intended to be addressed by the parties in connection with the release."
Hardage filed a memorandum of law in opposition to Fidesys' motions, with a supporting affidavit submitted by the president of Hardage, Inc. The affiant claimed that the purpose of the release was to discharge all parties to the construction management agreement from any and all liabilities that may have arisen. Moreover, the release contemplated a termination of the relationship between Hardage and Fidesys, and a complete severance of all obligations under the construction management agreement.
Thereafter, the trial court entered a final order of summary judgment and a final order granting the motion for judgment on the pleadings. The court ruled that the release does not "clearly and unequivocally" release Hardage from negligence claims. Since there were no material facts in dispute, Fidesys was entitled to judgment as a matter of law; thus, its claims against Hardage arising from the latter's negligence were not barred. Hardage then filed the instant appeal.
The judgment of the trial court is based upon the erroneous assumption that a release will not bar claims of negligence merely because it does not specifically contain the word "negligence." There are no words of art required in a release if the intent of the parties is apparent from the language used. No Florida appellate court has ever held that the word "negligence" must be included in a release for it to bar negligence claims. According to the great weight of authority in this country, specific wording is not a precondition to finding that a release precludes negligence claims. See, e.g., LeSueur Creamery, Inc. v. Haskon, Inc., 660 F.2d 342, 352 (8th Cir.1981), cert. denied, 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982); Berwind Corp. v. Litton Industries, Inc., 532 F.2d 1, 4 (7th Cir.1976); Larsen v. Vick Tanny International, 130 Ill. App.3d 574, 85 Ill.Dec. 769, 474 N.E.2d 729 (5th Dist. 1984); Gross v. Sweet, 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (N.Y. 1979); Blide v. Rainier Mountaineering, Inc., 30 Wash. App. 571, 636 P.2d 492 (1981); Boehm v. Cody County Chamber of Commerce, 748 P.2d 704, 711 (Wyo. 1987).
The language in the release between Hardage and Fidesys is clear and unequivocal. It must be interpreted to include a release from the negligent acts of both parties. Although the release does not specifically contain the word "negligence," the language used clearly reflects the intent of the parties to release Hardage from any and all liabilities, including those arising out of its own negligence. Instructive in this regard is the case of Bellefonte Ins. Co. v. Queen, 431 So.2d 1039 (Fla. 4th DCA 1983). That controversy arose out of the death of a child caused by a moving school bus. After the accident, the child's parents signed an agreement releasing the school board from "all claims and demands, actions and causes of action, damages, costs, loss of services, expenses, and compensation on account of or in any way growing out of (the accident) ..." Id. at 1040. Despite the broad and all-encompassing *438 language, the parents later claimed that they intended to release the school board from certain types of claims and not others. The court held that, even if that were true, the language of the agreement was clear and unambiguous and unequivocally released the school board from all claims.
The trial court, in accepting the argument of Fidesys that the release does not encompass claims for negligence in clear and unequivocal language, relied on the authority of four cases: University Plaza Shopping Center v. Stewart, 272 So.2d 507 (Fla. 1973); Ivey Plants, Inc. v. FMC Corp., 282 So.2d 205 (Fla. 4th DCA 1973), cert. denied, 289 So.2d 731 (Fla. 1974); O'Connell v. Walt Disney World Co., 413 So.2d 444 (Fla. 5th DCA 1982); and Key Biscayne Divers, Inc. v. Marine Stadium Enterprises, Inc., 490 So.2d 137 (Fla. 3d DCA 1986).
The University Plaza case is readily distinguishable because it dealt with an indemnification agreement rather than an exculpatory release. In the instant case, of course, we are concerned only with the latter. The distinction was explicated in our O'Connell opinion:
An exculpatory clause purports to deny an injured party the right to recover damages from the person negligently causing his injury. An indemnification clause attempts to shift the responsibility for the payment of damages to someone other than the negligent party (sometimes back to the injured party, thus producing the same result as an exculpatory provision).
O'Connell at 446. University Plaza concerned an indemnification clause whereby a negligent landlord sought indemnification from a tenant for an explosion which killed an employee of the tenant. The basis of the landlord's action was a lease agreement which provided that the tenant would indemnify and hold harmless the landlord "from and against any and all claims for any personal injury or loss of life in and about the demised premises." The Florida Supreme Court limited its holding to the factual situation and determined that the use of the general term "indemnify ... against any and all claims" does not disclose an intention to indemnify for consequences arising solely from the negligence of the indemnitee.
In Ivey Plants, Ivey leased a piece of equipment from FMC Corporation and executed, as part of the lease, a prospective release from any damages resulting from the maintenance and operation of the equipment and an indemnification agreement purporting to hold FMC harmless against all liability, costs, or expense arising from such maintenance or operation. Ivey alleged that FMC was responsible for installing and maintaining a wax catching container for a fruit waxing machine, and its failure to do so resulted in the spillage of explosive material, a resultant fire, and damages. The trial court entered a summary judgment for FMC, which was reversed on appeal in a 2-1 opinion by the Fourth District.
The court narrowly construed the language of the exculpatory clause as relevant only to independent acts of negligence by FMC, not to breaches of express contractual obligations assumed by FMC under the lease regarding future maintenance of the equipment. In the instant case, we are not concerned with a release from future acts of negligence, but from past acts  and there is nothing to suggest that those acts contemplated by the release excluded acts to be performed under the contract. Indeed, it is obvious that the exact opposite was intended by the parties.
In O'Connell, we determined that an issue of fact existed, precluding a defense summary judgment, where a release form referred only to the assumption of risks "inherent in horseback riding" and to injuries sustained "as a result of that horseback riding." This language did not bar recovery for injuries resulting from the defendant's active negligence because there was no express statement that encompassed negligence of a party that would not necessarily inhere in the sport of horseback riding. There is no such restrictive language in the instant release between Hardage and Fidesys.
In Key Biscayne Divers, Inc., a marina leased storage space for a commercial vessel, which was destroyed when the rack *439 where it was housed collapsed after a rain storm. The boat owner sued for damages, and suffered an adverse summary judgment based upon a storage agreement between the parties which provided:
The owner for himself, ... hereby releases and agrees to indemnify and hold harmless the company . .. for any and all liability for personal injury, loss of life and property damage: (1) arising out of the ordinary negligence of the company or its employees and agents in connection with the Company's premises or the use of the storage space; (2) in connection with the Owner's boat, motor and accessories while it is on the premises ...; (3) for loss or damage to the Owner's boat, motor and accessories or contents thereof due to fire, theft, vandalism, collision, marina equipment failure, windstorm, rain, hurricane or other casualty loss.
The Third District, in affirming the summary judgment, held:
Contractual provisions by which a party seeks exculpation for his own negligence, although not favored in the law, have been upheld as not violative of public policy where the contract is between persons of equal bargaining power and the provisions are clear and unambiguous. Mankap Enterprises, Inc. v. Wells Fargo Alarm Services, Inc., 427 So.2d 332 (Fla. 3d DCA 1983); Ivey Plants, Inc. v. FMC Corp., 282 So.2d 205 (Fla. 4th DCA 1973), cert. denied, 289 So.2d 731 (Fla. 1974). Similarly, we have, in a line of burglar alarm cases, upheld exculpatory clauses against claims for consequential losses based on breach of contract and gross negligence. Continental Video Corp. v. Honeywell, Inc., 422 So.2d 35 (Fla. 3d DCA), rev. denied, 456 So.2d 892 (Fla. 1982); Ace Formal Wear, Inc. v. Baker Protective Service, Inc., 416 So.2d 8 (Fla. 3d DCA 1982). The only other instance, so far, where public policy has voided an exculpatory clause is where a party sought to be exempted for his own intentional tort. Mankap.

The mutual release was entered into by Hardage and Fidesys after the construction management agreement had been completed. This was not a situation where public policy mandates the protection of consumers who are offered a contract in a "take it or leave it" form. Fidesys and Hardage were in positions of equal bargaining power and should be held to the agreement that was reached as a result of their negotiations.
Accordingly, the judgment below is
REVERSED.
COWART, J., and SCHWARTZ, A.R., Associate Judge, concur.