705 So.2d 120 (1998)
GREATER ORLANDO AVIATION AUTHORITY, Appellant/Cross-Appellee,
v.
BULLDOG AIRLINES, INC., Appellee/Cross-Appellant.
No. 96-3619.
District Court of Appeal of Florida, Fifth District.
January 23, 1998.
*121 David C. Beers of McDonough, O'Dell, Beers, Wieland, Williams & Kraker, P.A., Orlando, for Appellant/Cross-Appellee.
Scott J. Johnson of Maguire, Voorhis & Wells, P.A., Orlando, for Appellee/Cross-Appellant.
PETERSON, Judge.
Greater Orlando Aviation Authority ("GOAA") appeals a final judgment entered in favor of appellee, Bulldog Airlines, Inc. ("Bulldog") after a jury found that the latter was entitled to damages. GOAA contends that the trial court should have granted its motion for judgment on the pleadings or alternative motion for directed verdict as to all counts brought by Bulldog. We agree and reverse.
Bulldog owned and operated a helicopter business at Orlando International Airport. GOAA, a state agency, operates the airport and leases portions of it to tenants engaged in the aviation industry. Bulldog became a tenant of GOAA in February, 1994. The parties' "Space and Use Agreement" included the following provision in section V(2):
[GOAA] reserves the right (a) to further develop, improve, repair and alter the Airport and all roadways, parking areas, terminal facilities, landing areas and taxiways as it may reasonably see fit, free from any and all liability to [Bulldog] for loss of business or damages of any nature whatsoever to [Bulldog] occasioned during the making of such improvements, repairs, alterations and additions....
Notwithstanding this provision, Bulldog claims GOAA is responsible for damages to its helicopters and facilities because debris, primarily cement dust, was blown or spread from a construction project known as the West Ramp Rehabilitation Program. The rehabilitation project was carried out by an independent contractor, John Carlo, Inc. ("Carlo"), hired by GOAA. Bulldog, in its multi-count complaint against GOAA, alleges three theories of recovery: negligence, breach of contract, and third-party beneficiary, the latter based on the assumption that Bulldog was a third-party beneficiary of the construction contract between GOAA and Carlo. We find that the exculpatory clause of section V(2) of the Space and Use Agreement is dispositive of all of Bulldog's claims.
Exculpatory clauses generally are not looked upon with favor, but such clauses are valid and enforceable if the intention to relieve a party of its own negligence is made clear and unequivocal in the contract. See Muns v. Shurgard Income Properties Fund 16-Limited Partnership, 682 So.2d 166 (Fla. 4th DCA 1996) (although disfavored, exculpatory clauses which limit or exempt liability for negligence are enforceable); Southworth & McGill, P.A. v. S. Bell Tel. & Tel. Co., 580 So.2d 628 (Fla. 1st DCA 1991) (exculpatory clauses are enforceable only where and to the extent that the intention to be relieved from liability was made clear and unequivocal in the contract; wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away); F.D.I.C. v. Carre, 436 So.2d 227 (Fla. 2d DCA 1983), rev. denied, 444 So.2d 416 (Fla.1984); Meyer v. Caribbean Interiors, Inc., 435 So.2d 936 (Fla. 3d DCA 1983); Middleton v. Lomaskin, 266 So.2d 678 (Fla. 3d DCA 1972) (generally, exculpatory contracts attempting to relieve party of his own negligence are not looked on with favor, but such contracts are valid and enforceable if *122 such intention is made clear and unequivocal in such contract).
Bulldog argues that the clause in the instant case should be strictly construed against GOAA, the drafter of the provision, and that such an interpretation would not shield GOAA from its own negligence. Bulldog further contends that Florida courts have implied that the only means of stating a clear and unambiguous expression of an intention to be free from liability for one's own negligence is to actually use the word "negligence," in the exculpatory clause. In support of such contention, Bulldog cites to several cases construing indemnification clauses: O'Connell v. Walt Disney World Co., 413 So.2d 444 (Fla. 5th DCA 1982); Cox Cable Corp. v. Gulf Power Co., 591 So.2d 627 (Fla. 1992); Charles Poe Masonry, Inc. v. Spring Lock Scaffolding Rental Equipment Co., 374 So.2d 487 (Fla.1979); and University Plaza Shopping Center v. Stewart, 272 So.2d 507 (Fla.1973).
This court noted, in its O'Connell opinion, the distinction between an exculpatory clause and an indemnification clause:
An exculpatory clause purports to deny an injured party the right to recover damages from the person negligently causing his injury. An indemnification clause attempts to shift the responsibility for the payment of damages to someone other than the negligent party (sometimes back to the injured party, thus producing the same result as an exculpatory provision).
O'Connell at 446. In the instant case, we are concerned only with the effects of section V(2) of the parties' Space and Use Agreement, an exculpatory clause. The cases construing indemnification clauses cited by Bulldog are irrelevant as GOAA is seeking exculpation not indemnification.
Bulldog's contention that Florida courts have implied that the only method of conveying a clear and unambiguous expression of an intention to be free from liability for one's own negligence is to use the word "negligence," is erroneous. Hardage Enterprises, Inc. v. Fidesys Corp., N. V., 570 So.2d 436 (Fla. 5th DCA 1990)(exculpatory release which applied to "any and all claims, demands, damages, actions, causes of actions, or suits in equity, of whatsoever kind or nature," clearly reflected intent to release construction manager from any and all liabilities in connection with construction project, including those arising out of its own negligence regardless of the fact that the release did not specifically contain the word "negligence").
Review of the record reveals that construction at the airport's west ramp began in 1993, and that, in fact, Bulldog first complained about the emanating contaminants and foreign objects in July, 1993, at which time Bulldog was only leasing property adjacent to the Orlando International Airport. Nevertheless, in February, 1994, Bulldog entered into its first Space and Use Agreement with GOAA, leasing facilities adjacent to the then ongoing construction. During the term of this lease, Bulldog wrote several letters of complaint to GOAA. Bulldog, despite its concern about contaminants, entered into another Space and Use Agreement with GOAA in May, 1995. Both Space and Use Agreements contain the exculpatory language found in section V(2). This language unambiguously authorizes GOAA to make renovations at the airport free from "any and all liability" to Bulldog. Bulldog cannot now complain that the provision is invalid, especially when it entered the leases at a time when construction had already begun. GOAA did not fail in drafting its waiver of liability provision, but rather, Bulldog apparently failed to recognize what it was contracting away in clear and unequivocal language.
We find no merit in Bulldog's claim that GOAA failed to assert the Space and Use Agreement as a defense. GOAA properly raised this contractual waiver defense under its fifth affirmative defense by asserting that Bulldog "is contractually estopped from the maintenance of this action pursuant to the Space and Use Agreement in effect between GOAA and [Bulldog] at the time [Bulldog] incurred the alleged damages and/or losses." Additionally, Bulldog attached a copy of the agreement to its complaint and by doing so placed all of the terms of that agreement before the court, including the exculpatory provision found in section *123 V(2) of the parties' Space and Use Agreement.
We also find no merit in Bulldog's assertion that the construction agreement between GOAA and Carlo created a right in its favor against GOAA. If any rights were created in favor of Bulldog, Carlo would be the appropriate defendant, but Bulldog chose not to join it as a party to this litigation.
The final judgment entered against GOAA is reversed.
REVERSED.
COBB and GOSHORN, JJ., concur.