793 So.2d 1171 (2001)
Robin RAVESON and Richard Raveson, Her Husband, Appellants,
v.
WALT DISNEY WORLD COMPANY, et al., Appellees.
Nos. 5D00-2196, 5D00-2473.
District Court of Appeal of Florida, Fifth District.
September 14, 2001.
Bard D. Rockenbach of Sellars, Marion & Bachi, P.A., West Palm Beach, and Justus Reid and Laurence Huttman of Reid, Metzger & Associates, West Palm Beach, for Appellants.
John H. Ward and Suzanne D'Agresta of Brown, Ward, Salzman & Weiss, P.A., Orlando, for Appellee.
PETERSON, J.
Robin and Richard Raveson appeal a final summary judgment granted to Walt Disney World Company, et al. (Disney), in an action brought by the Ravesons for injuries received when the horse Robin was riding on at Disney's Fort Wilderness reared as she was dismounting. The Ravesons contend that Disney was negligent in failing to properly train the horse and the employees who supervised the ride.
Before Robin began the ride, she signed a release and indemnity agreement which specifically provided the following:
WARNING
UNDER FLORIDA LAW, AN EQUINE ACTIVITY SPONSOR, OR EQUINE PROFESSIONAL, IS NOT LIABLE FOR AN INJURY TO, OR THE DEATH OF, A PARTICIPANT IN EQUINE ACTIVITIES RESULTING FROM THE INHERENT RISKS OF EQUINE ACTIVITIES[1].

*1172 RELEASE AND INDEMNITY AGREEMENT
In consideration of the acceptance of my participation and/or the participation of my child or ward, in the renting of a horse from the Walt Disney World Company, and with the understanding that a horse may be startled by sudden movement, noise or other factors, and may shy suddenly, rear, stop short, bite, buck, kick or run with its rider, especially when the ride is conducted through a natural setting, as this ride will be, I AGREE TO ASSUME THE RISKS incidental to such participation including, but not limited to, those risks set out above, and, on my own behalf, on behalf of my child or ward, and on behalf of my child's or ward's heirs, executors and administrators, RELEASE and forever discharge the released parties defined below, of and from all liabilities, claims, actions, damages, costs or expenses of any nature, arising out of or in any way connected with my participation and/or the participation of my child or ward in such horseback riding and further agree to indemnify and hold each of the released parties harmless against any and all such liabilities, claims, actions, damages, costs or expenses, including, but not limited to, attorney's fees and disbursements. The released parties are the Walt Disney World Company and Lake Buena Vista Communities, Inc., their parent, related, affiliated and subsidiary companies, and the officers, directors, employees, agents, representatives, successors and assigns of each. I understand that this release and indemnity agreement includes any claims based on the negligence, actions or inaction of any of the above released parties and covers bodily injury and property damage, whether suffered by me, my child or ward before, during, or after such participation. I further authorize medical treatment for said child or ward, at my cost, if the need arises.
The trial court granted summary judgment to Disney based upon the above release and indemnity agreement and upon section 773.01(6), Florida Statutes (1997), relating to equine activities, which provides:
(6) "Inherent risks of equine activities" means those dangers or conditions which are an integral part of equine activities, including but not limited to:
(a) The propensity of equines to behave in ways that may result in injury, harm, or death to persons on or around them.
(b) The unpredictability of an equine's reaction to such things as sounds, sudden movement, and unfamiliar objects, persons or other animals.
(c) Certain hazards such as surface and subsurface conditions.
* * *
(e) The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within his or her ability.
Section 773.02 further provides the following general provision:
[A]n equine activity sponsor, an equine professional, or any other person, which shall include a corporation or partnership [such as Disney], shall not be liable for an injury to or the death of a participant [such as Raveson] resulting from the inherent risks of equine activities and, except as provided in s. 773.03, no participant nor any participant's representative shall have any claim against or recover from any equine activity sponsor, equine professional, or any other person for injury, loss, damage, or death *1173 of the participant resulting from any of the inherent risks of equine activities.
We agree with the reliance of the trial court on the release and indemnity agreement in finding Disney not liable. In Lantz v. Iron Horse Saloon, Inc., 717 So.2d 590 (Fla. 5th DCA 1998), this court held that exculpatory claims will release a party's own negligence "to the extent that the intention to be relieved from liability was made clear and unequivocal in the contract; wording must be so clear and understandable than an ordinary and knowledgeable party will know what he is contracting away." Id. at 591 (citing Greater Orlando Aviation Authority v. Bulldog Airlines, Inc., 705 So.2d 120 (Fla. 5th DCA 1998)). The exculpatory clause included in the release that Robin Raveson signed prior to mounting the horse in the instant case clearly meets that requirement.
Additionally and separately from the release and indemnity agreement, section 773.02, Florida Statutes may serve to release Disney from liability. Chapter 773, Florida Statutes recognizes the inherent risks of equine activities and eliminates the liability of equine professionals from claims by a participant in an equine activity. See Fla. Stat. § 773.01(5), (6), & (7) (1997). Section 773.03(2)(b) does not eliminate liability when an equine professional fails to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity, or to determine the ability of the participant to safely manage the particular equine based on the participant's representation of his or her ability. Robin Raveson admits that Disney requested her to describe her horse riding experience and she responded with "some years ago."
The provision contained in section 773.03(2)(b) may be an obstacle to an equine professional obtaining a summary judgment in a majority of the cases involving the type of trail rides involved in this case where there exists no prior or ongoing relationship among participant, professional, and equine. There is usually much to discuss regarding a participant's "ability" and the "particular equine" matched to the ability.[2] It is not in this instance because the release and indemnity agreement, independent of the statutory provisions of Chapter 773 eliminated Disney's liability for a negligent act, if any occurred.
Nothing appears in Chapter 773 or its history that would restrict an equine professional from obtaining a release and indemnity agreement in order to eliminate liability that would survive the limitations of Chapter 773. The language of the exceptions to the limitation of liability found in section 773.03 does not specifically state or even suggest that the body of law allowing one to obtain a release and indemnity agreement would be ineffective in extinguishing potential liability.
We also note a decision by the fourth district in Dilallo v. Riding Safely, Inc., 687 So.2d 353 (Fla. 4th DCA 1997) that is instructional in the analysis of the instant case. In Dilallo, a 14-year old leased a *1174 horse once before the date of an accident. On that earlier ride, the horse moved no faster than a walk. On the second ride on another day, the unpredictable nature of the equine surfaced and it began to move on its own initiative at a faster gait. All attempts to stop the horse failed and the rider was injured when the branch of a tree became imbedded in her leg as the horse ran close to a tree. The Fourth District reversed the trial court's finding that the equine professional was not liable to the participant because of the liability exclusions of Chapter 773 and a release and indemnity agreement. The reversal was based upon the inapplicability of Chapter 773 because the effective date post-dated the accident and an infant was legally incompetent to execute the release and indemnity agreement. The case is instructional in that the release and indemnity agreement signed by the participant included language similar to but less specific than that continued in Disney's release and indemnity agreement. The Dilallo opinion states:
We find the release in this case does clearly state that ... [the equine sponsor] is released from liability for its own negligence. This factual scenario would support summary judgment, had ... [the participant], the person signing this complete waiver of her rights, not been a minor.
Id. at 355.
We affirm the summary judgment granted to Disney on the ground that the release and indemnity agreement signed by Robin Raveson, an adult, was effective to release Disney from its own negligence, if any existed.
Lastly, we also affirm the trial court's award of costs and attorney's fees to Disney based on the clear language of the release and indemnity agreement.
AFFIRMED.
GRIFFIN and SAWAYA, JJ., concur.
NOTES
[1] This warning complies with the notification requirement found in section 773.04, Florida Statutes (1997).
[2] While some degree of matching may be possible, section 773.01(6) seems to contradict the exclusion of liability provided in section 773.02 against the propensity of equines to behave in ways that may result in injury, harm, or death and the unpredictability of an equine's reaction to such things as sounds, sudden movement, and unfamiliar objects, persons, or other animals. Robin Raveson successfully and without incident mounted and rode the horse assigned to her on a trail ride. It was not until the final moment of the event as she was dismounting that the equine unpredictably moved in a manner that caused her injury.