PER CURIAM.
 

 Ila Abis appeals a final summary judgment entered in favor of the appellees, Tudin, D.V.M., P.A., and Ronnie E. Tudin, D.V.M., individually, who were the defendants in a veterinary malpractice action. For the reasons we explain, we affirm in part and reverse in part.
 

 I. BACKGROUND
 

 Abis was a client of the appellees, and she took her two dogs to the appellees for a routine examination. During the examination, Dr. Tudin recommended that Abis purchase a new heartworm medication, ProHeart 6, for her dogs. Abis agreed, and Dr. Tudin administered the drug to the dogs. Shortly thereafter, the dogs began to exhibit physical ailments. One of the dogs, Sophie, was diagnosed by Dr. Tudin as having thyroid failure, but there was no discernable cause. Abis then contacted Fort Dodge Animal Health (Fort Dodge), the manufacturer of ProHeart 6, and asked it to cover the expense of testing to determine whether ProHeart 6 caused her dogs’ physical ailments. Although the test results were inconclusive as to whether ProHeart 6 caused the ailments, Abis alleged that Dr. Tudin told her the test results were negative.
 

 Subsequently, Abis contacted Karola A. Swan, D.V.M., at Fort Dodge to inform her that one of the dogs, Yogi, had to be euthanized due to the extent of its ailments. Abis further informed Dr. Swan that she believed ProHeart 6 was responsible for the illnesses in her dogs. Abis requested that Fort Dodge (1) make new labels for the drug, (2) pay for a replacement dog, (3) pay all veterinary bills, and (4) pay for training of a new dog.
 

 Dr. Swan responded in writing to Abis’s allegations and requests. While denying that ProHeart 6 caused the dogs’ illnesses, Dr. Swan, on behalf of Fort Dodge, offered as a “customer relation gesture” to compensate Abis for the balance of her veterinary expenses, the replacement cost of a new dog in the amount of $2000, and the cost of training the new dog in the amount of $5000. Included with the letter/offer
 
 *668
 
 was a release, which Dr. Swan asked Abis to sign and return. The release provided, in pertinent part, as follows:
 

 For the sole consideration of EIGHT THOUSAND THREE HUNDRED SIXTY THREE DOLLARS AND TWENTY CENTS ($8,363.20), ILA ABIS ... hereby releases and forever discharges WYETH, and their respective division, FORT DODGE ANIMAL HEALTH divisions and their employees, directors, officers, subsidiaries, affiliates, insurers, agents, successors and assigns, and all other persons, firms, corporations and entities ... from all claims, demands, expenses, attorneys’ fees, causes of action or suits of any kind or nature, resulting from or claimed to have resulted from the sale, use or administration of PROHEART 6 INJ at any time prior to the date hereof, including any injuries resulting therefrom or claimed to have resulted therefrom.
 

 It is expressly understood that this Release is a full, final and binding settlement and final discharge of all claims arising out of or relating to the allegations made in the claim.... This Release is intended to cover all claims, demands, expenses, attorneys’ fees, causes of action or suits of any kind or nature, civil or otherwise, past, present or future, which may have been, or may ever be asserted by [Abis] as a result of the claimed injuries and/or other damages or effects or consequences to [Abis] of the use or administration of the subject product at any time prior to the date hereof. This Release is intended to cover any and all future injuries, damages or losses not currently known to [Abis], but which may later develop, or be discovered in connection with the use or administration of the subject product.
 

 Abis signed the release and returned it to Dr. Swan. Fort Dodge then forwarded a check to Abis.
 

 After entering the settlement with Fort Dodge, Abis filed a three-count complaint against the appellees for (1) veterinary malpractice (negligence), (2) breach of contract, and (3) negligent infliction of emotional distress. After the third claim was dismissed, the appellees filed a motion for summary judgment, asserting that the release that Abis signed precluded her from bringing the action. The trial court agreed and entered final summary judgment in favor of the appellees. This appeal by Abis now follows.
 

 II. ANALYSIS
 

 “Where contract language is clear and unambiguous, it is up to the court to interpret the contract as a matter of law.”
 
 Neumann v. Brigman,
 
 475 So.2d 1247, 1249 (Fla. 2d DCA 1985). “Whether an ambiguity exists is also a question of law.”
 
 Wheeler v. Wheeler, Erwin & Fountain, P.A.,
 
 964 So.2d 745, 749 (Fla. 1st DCA 2007). Where provisions are ambiguous, however, the ambiguity must be resolved by the trier of fact.
 
 See Neumann,
 
 475 So.2d at 1249. This court’s standard of review is de novo.
 
 See Wheeler,
 
 964 So.2d at 749.
 

 Abis first contends that because the release does not expressly reference acts of negligence, it is unenforceable. In support of this argument, Abis relies on a case which holds that for an exculpatory clause to be enforceable, “ ‘it must clearly state that it releases the party from liability for his own negligence.’ ”
 
 Rosenberg v. Cape Coral Plumbing, Inc.,
 
 920 So.2d 61, 66 (Fla. 2d DCA 2005) (quoting
 
 Goyings v. Jack & Ruth Eckerd Found.,
 
 403 So.2d 1144, 1146 (Fla. 2d DCA 1981)). Abis’s reliance is misplaced, however, because the instant case involves a postclaim
 
 release
 
 as distinguished from a preclaim
 
 exculpatory clause.
 

 
 *669
 
 The requirement that exculpatory clauses specifically reference negligence arises from the concern that when parties enter into a contract that has an exculpatory clause, they may not fully appreciate the range of future claims that may arise between the parties. The uncertainty regarding future events points to a heightened need for specificity. No such policy concern exists for postclaim releases, however, because once an injury has occurred, the parties are aware of the circumstances related to the injury and the injured party can reasonably be held accountable for fully appreciating the implications of a general release.
 

 The rule that a release of claims arising from events that have already occurred when the release is entered need not specifically reference acts of negligence is supported by
 
 Hardage Enterprises v. Fidesys Corp.,
 
 570 So.2d 436, 437 (Fla. 5th DCA 1990), where the release at issue was entered by the parties after a dispute arose between them regarding alleged deficiencies in a building construction project. The court stated that “[i]n the instant case, we are not concerned with a release from future acts of negligence, but from past acts.”
 
 Id.
 
 at 438. The court held that “[tjhere are no words of art required in a release if the intent of the parties is apparent from the language used. No Florida appellate court has ever held that the word ‘negligence’ must be included in a release for it to bar negligence claims.”
 
 Id.; Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.,
 
 761 So.2d 306, 314 (Fla.2000) (“Generally, Florida courts enforce general releases to further the policy of encouraging settlements.”);
 
 see also Greater Orlando Aviation Auth. v. Bulldog Airlines, Inc.,
 
 705 So.2d 120, 122 (Fla. 5th DCA 1998) (“[C]ontention that Florida courts have implied that the only method of conveying a clear and unambiguous expression of an intention to be free from liability for one’s own negligence is to use the word ‘negligence,’ is erroneous.”).
 

 Here, the release provided that it applied to “all claims, demands, expenses, attorneys’ fees, causes of action or suits of
 
 any kind or nature,
 
 resulting from or claimed to have resulted from the sale, use or administration of ProHeart 6 INJ.” (Emphasis added.) It is clear beyond any doubt from this language that the parties intended for the release to cover all forms of liability, including negligence, which resulted from the sale, use, or administration of the heartworm medication. Consequently, this postclaim release was not invalid or unenforceable for failing to include a specific reference to negligence.
 

 Abis’s next argument is that the release is unenforceable because it did not specifically state that it covered the appel-lees. Abis’s argument would be well taken if this case involved a release containing a handwritten portion specifically naming one party and a typewritten portion generally referencing “any other person, corporation, association or partnership.”
 
 See Hurt v. Leatherby Ins. Co.,
 
 380 So.2d 432, 433 (Fla.1980) (holding that releases were ambiguous and thus, that summary judgment could not be entered where releases contained blank spaces for parties to hand-write the names of specifically listed parties but also contained typewritten general provisions);
 
 see also Sangiovanni v. Stengle,
 
 652 So.2d 897, 898 (Fla. 2d DCA 1995) (same);
 
 Amerada Hess Corp. v. Federated Dep’t Stores, Inc.,
 
 782 So.2d 445, 448 (Fla. 4th DCA 2001) (same).
 

 However, in this case, the release was completely typewritten. The reference in the release to “all other persons, firms, corporations and entities” clearly applies to appellees for claims resulting from “the sale, use or administration of
 
 *670
 
 ProHeart 6.”
 
 See Hester v. Gatlin,
 
 332 So.2d 660, 662 (Fla. 2d DCA 1976) (holding that release which specifically referenced certain parties but went on to discharge “any and all other persons and/or corporations” was sufficient to release unnamed third party).
 

 However, we conclude that in entering a blanket summary judgment as to all of Abis’s claims, the trial court erred. As Abis argues, the complaint sought relief regarding some matters that are not necessarily within the scope of the release. In her complaint, Abis alleged, for example, that Dr. Tudin “misdiagnosed and mistreated” the dog’s symptoms by treating Sophie’s excretory issues with pancreatic enzyme replacement even though “no tests supported pancreatic enzyme insufficiency.” Furthermore, the complaint alleges broadly that Sophie suffered from severe illness and discomfort and that Dr. Tudin’s “misdiagnoses and mistreatments needlessly increased [her] suffering.” The record does not establish that such claims are within the scope of the release.
 

 For claims that were not barred by the release, the appellees had the burden of showing some other basis for summary judgment against Abis. The appellees’ mere denials of negligence in their answer and affirmative defenses were insufficient to meet that burden. Accordingly, the trial court erred by granting summary judgment as to Abis’s claims that were not barred by the release.
 

 II. CONCLUSION
 

 We therefore affirm the final summary judgment as it pertains to claims that resulted from the use and administration of ProHeart 6, but we reverse and remand the final summary judgment as it pertains to any claims that did not result from the use and administration of ProHeart 6.
 

 Affirmed in part; reversed in part; remanded.
 

 CASANUEVA, C.J., DAVIS, J., and CANADY, CHARLES T., Associate Judge, Concur.