BERGER, J.,
concurring in part, dissenting in part.
I agree with the majority that UCFAA is a corporation primarily acting as an instrumentality of the state, thereby entitling it to limited sovereign immunity. However, I do not agree with the majority view that the release found in Paragraph M of the Authorization is ambiguous. In my view, the release signed by Ereck Plancher was clear, unambiguous, and enforceable. Accordingly, I would reverse the order of the trial court denying summary judgment on this issue and remand for consideration of the avoidances raised by the Planehers.[18]
Although exculpatory clauses are generally disfavored in the law, unambiguous exculpatory contracts are enforceable where the intention to be relieved from liability is made clear and unequivocal. Tatman v. Space Coast Kennel Club, Inc., 27 So.3d 108, 110 (Fla. 5th DCA 2009). While the wording must be so clear and understandable that “an ordinary and knowledgeable person will know what he is contracting away,” id. (quoting Gayon v. Bally’s Total Fitness Corp., 802 So.2d 420, 421 (Fla. 3d DCA 2001)); see also Raveson v. Walt Disney World Co., 793 So.2d 1171 (Fla. 5th DCA 2001), “the ability to predict each and every potential injury is unattainable and is not required to uphold an exculpatory provision within a release.” Give Kids the World, Inc. v. Sanislo, 98 So.3d 759 (Fla. 5th DCA 2012), rev. granted, No. SC12-2409, 2013 Fla. LEXIS 1249 (Fla. June 3, 2013).
Because the exculpatory clause at issue in this case does not expressly release UCFAA from its own negligence, the Planehers contend the release is unenforceable. They argue that because the exculpatory clause does not include the word “negligence” the release does not clearly and unambiguously waive actions of negligence. Although the other districts have adopted a “bright line” rule requiring such express language, Rosenberg v. Cape Coral Plumbing, Inc., 920 So.2d 61 (Fla. 2d DCA 2005); Witt v. Dolphin Research Ctr., Inc., 582 So.2d 27 (Fla. 3d DCA 1991); Levine v. A. Madley Corp., 516 So.2d 1101 (Fla. 1st DCA 1987); Van Tuyn v. Zurich Am. Ins. Co., 447 So.2d 318 (Fla. 4th DCA 1984), this court has repeatedly rejected the need for express language referring to a release of the defendant for “negligence” or “negligent acts” in order to render a release effective to bar a negligence claim. Cain v. Banka, 932 So .2d 575, 578 (Fla. 5th DCA 2006); see also Give Kids the World, Inc., 98 So.3d at 759; Lantz v. Iron Horse Saloon, Inc., 717 So.2d 590 (Fla. 5th DCA 1998). I continue to believe ours is the proper view. Because the word “all” is easily understandable, a release waiving “all claims, causes of actions or demands of any kind *1111 and nature whatsoever” clearly encompasses all claims, including claims of negligence, even though the term “negligence” is not specifically referenced.[19]
Indeed, the following language in Paragraph M of the Authorization is consistent with language we have previously determined to be clear and unambiguous:
In consideration of the University of Central Florida Athletic Association, Inc. permitting me to participate in intercollegiate athletics and to engage in all activities and travel related to my sport, I hereby voluntarily assume all risks associated with participation and agree to exonerate, save harmless and release the University of Central Florida Athletic Association, Inc., its agents, servants, trustees, and employees from any and all liability, any medical expenses not covered by the University of Central Florida Athletic Association’s athletics medical insurance coverage, and all claims, causes of action or demands of any kind and nature whatsoever which may arise by or in connection with my participation in any activities related to intercollegiate athletics.
(Emphasis added). See Give Kids the World, Inc., 98 So.3d at 762 (language releasing “any and all claims and causes of action of every kind arising from any and all physical or emotional injuries” and “any liability whatsoever in connection with the preparation, execution, and fulfillment of said wish” broad enough to encompass negligence claims); Cain, 932 So.2d at 579 (exculpatory clause absolving defendant of “any and all liability, claims, demands, actions, and causes of action whatsoever” was sufficient to encompass plaintiffs negligence); Lantz, 717 So.2d at 591-92 (exculpatory clause releasing appellant “from all, and all manner of action and actions, cause and causes of action, suits ... damages ... claims ... and demands whatsoever, in law or in equity, which [appellant] ever had, now has, ... hereinafter can, shall or may have, ... for upon or by reason of any matter, cause or thing whatsoever” sufficient to release claims based on negligence); Hardage Enters., Inc. v. Fidesys Corp., N.V., 570 So.2d 436, 437 (Fla. 5th DCA 1990) (determining that “any and all claims, demands, damages, actions, causes of actions, or suits in equity, of whatsoever kind or nature” encompassed negligence action).
Relying on this court’s decision in O’Connell v. Walt Disney World Co., 413 So.2d 444 (Fla. 5th DCA 1982), the Planch-ers argue that Paragraph M, in its entirety, only releases UCFAA from injuries associated with Ereck’s participation in activities related to intercollegiate athletics, not to injuries caused by UCFAA’s own negligence. O’Connell involved a negligence action against an amusement park to recover damages for injuries sustained to a child during a stampede allegedly caused by the negligent act of the park’s employees during a horseback ride. Id. In O’Connell, this court found that a claim of negligence was not barred by an express assumption of the risk clause that referred only to risks “inherent in horseback riding,” or an exculpatory clause, because there was evidence that the injury was caused, not by any inherent characteristic of horseback riding, but by the negligent *1112 conduct of appellee’s employees. Id. at 449. In other words, the language in the release did not bar recovery for injuries from the defendant’s active negligence because there was no express statement that encompassed negligence of a party that would not necessarily inhere in the sport of horseback riding.[20] See also Hardage Enters., Inc., 570 So.2d at 438 (Fla. 5th DCA 1990) (distinguishing O’Connell by the lack of restrictive language in the exculpatory clause).
While the release in O’Connell was expressly limited to injuries sustained as a result of horseback riding, the release in the instant case provided that Ereck would “assume all risks associated with participation and agree to exonerate, save harmless and release [UCFAA], its agents, servants, trustees, and employees from any and all- liability ... and all claims, causes of action or demands of any kind and nature whatsoever which may arise by or in connection with [his] participation in any activities related to intercollégiate athletics.” (Emphasis added). Here, the clear language in the release not only waived risks inherent in playing sports and claims for injuries as a result of that activity, but also released UCFAA from all claims of any nature whatsoever arising from any activities related to athletics. Accordingly, it would be a strained interpretation to conclude that the exculpatory clause did not encompass any and all claims “whatsoever,” including negligence claims, connected to Ereck’s death that occurred while he was participating in football practice.
The Planchers also argue that language found in the first paragraph of Paragraph M, when read in pari materia with the second paragraph containing the exculpatory clause, leads to the reasonable interpretation that UCFAA is released, if at all, only for injuries that occur despite UCFAA’s adherence to its own rules and procedures. At issue is the following language in paragraph one:
Because of the aforementioned dangers of participating in any athletic activity, I recognize the importance of following all instructions of the coaching staff, strength and conditioning staff, and/or Sports Medicine Department. Furthermore, I understand that the possibility of injury, including catastrophic injury, does exist even though proper rules and techniques are followed to the fullest.
The language warns the risk of injury exists “even though proper rules and techniques are followed.” According to the Planchers, because the Authorization explicitly requires Ereck to follow UCFAA’s orders, it logically follows that the language concerning “proper rules and techniques” is an attestation that UCFAA will only implement the proper rules and techniques. Thus, by signing the Authorization, Ereck relied on UCFAA to keep him healthy and promised to follow UCFAA’s rules in order to remain healthy. In support of this proposition, the Planchers cite Goyings v. Jack & Ruth Eckerd Foundation, 403 So.2d 1144 (Fla. 2d DCA 1981) and Murphy v. Young Men’s Christian Ass’n of Lake Wales, Inc., 974 So.2d 565 *1113 (Fla. 2d DCA 2008), both of which I find distinguishable.
In Goyings, a young girl suffered mental and physical injuries requiring her to be hospitalized while attending a camp for children with emotional problems. The child’s mother sued the camp alleging that the camp’s failure to administer medication caused her daughter’s injuries. The trial court granted summary judgment in favor of the camp finding that an exculpatory clause in the contract released the camp from any liability. The pertinent language stated:
It is further agreed that reasonable precautions will be taken by Camp to assure the safety and good health of said boy/girl but that Camp is not to be held liable in the event of injury, illness or death of said boy/girl, and the undersigned, does fully release Camp, and all persons concerned therewith, for any such liability.
Id. at 1145-46.
On appeal, the second district determined that, by their own choice of words, the camp agreed to take reasonable precautions to assure the child’s safety. Id. at 1146. As such, the camp’s release from liability rested on its exercise of reasonable care to ensure the child’s safety and good health. Id. at 1147. Whether the camp fulfilled its duty presented a factual question that precluded summary judgment. Id.
I am not persuaded that Goyings requires affirmance. While the exculpatory clause in Goyings contained express language that the camp would use “reasonable precautions” to insure the safety and good health of its campers, the same cannot be said for UCFAA. The two paragraphs comprising Paragraph M of the Authorization contain no express language promising that UCFAA will use reasonable care to ensure the safety of its athletes, and such a factual distinction is significant in light of the clear language of the release.
Although the majority sees it differently, I am likewise not persuaded by the holding in Murphy. I agree with UCFAA that the confusion that existed in Murphy does not exist in the present case. Here, the sentence containing the phrase “I understand that the possibility of injury ... does exist even though proper rules and techniques are followed” is located in a separate and distinct paragraph from the exculpatory clause. Additionally, the language at issue does not immediately precede the paragraph containing the exculpatory clause; but rather is followed by a sentence acknowledging the risks associated -with traveling in connection with intercollegiate athletics. Paragraph one simply outlines the risks associated with intercollegiate athletics. It does not express or imply that UCFAA will employ proper rules and techniques or undertake to ensure Ereck’s safety while practicing or playing football.
Since the language in the Authorization does not expressly state that UCFAA will employ proper rules and techniques or take reasonable precautions to assure the safety and good health of its athletes, in order for me to conclude that the exculpatory clause is unenforceable, I must find that a reasonable reading of the language in Paragraph M indicates such duty was implicitly promised. For the reasons stated above, I am unwilling to draw such a conclusion.[21]

. The Planehers pled a number of avoidanc-es to the release that were never addressed below. Because the avoidances raise factual issues that must be resolved in the trial court, I decline to address them here. I note only that, if proven, any one of the pled avoidances could serve to invalidate the release.

. One need only look to the plain meaning of the word "all" to reach this conclusion. "All” means “[t]he whole amount, quantity, extent ... [t]he entire number of; the individual constituents of, without exception .... [e]very ... [a]ny whatever ... [t]he greatest possible ,.. [everything; the totality _ every one of; the whole of; as much as ... [w]hole being, entirety, totality...." 1 Shorter Oxford English Dictionary 54-55 (5th ed. 2002).

. The release in O’Connell set forth, in pertinent part:
I consent to the renting of a horse from Walt Disney World Co. by Frankie, a minor, and to his/her assumption of the risks inherent in horseback riding. I agree, personally and on his/her behalf, to waive any claims or causes of action which he/she or I may now or hereafter have against Walt Disney World Co. arising out of any injuries he/she may sustain as a result of that horseback riding, and I will hold Walt Disney World Co. harmless against any and all claims resulting from such injuries.
413 So.2d at 445.

. My opinion regarding the enforceability of the release should not be interpreted to con *1114 done the egregious conduct of the UCFAA coaching staff. Indeed, as it appears and as the jury found, it was both the coaching staff's actions and inactions that led to the tragic death of Ereck Planchen It is difficult to comprehend how one human being can ignore another in obvious distress or prevent someone else from offering aid to one in distress, but, inexplicably, that is what happened here. In that regard, I would note that exculpatory clauses are unenforceable to the extent they attempt to release liability for intentional torts. See Loewe v. Seagate Homes, Inc., 987 So.2d 758 (Fla. 5th DCA 2008).