# Staunton

## June Rockwell Evans v. Isaac Schuster.

September 10, 1941.

Record No. 2378.

Present, Campbell, C. J., and Holt, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Aiken, Sanford & Johnson,* for the plaintiff in error.

*Carter & Williams, Waldo G. Miles* and *Mary H. Williams,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

The plaintiff in error (hereafter called plaintiff), brought an action at law, by notice of motion, against the defendant in error (hereafter called defendant), to recover damages from him, on the ground that he had sued out a distress warrant and had it levied upon her property for rent alleged to be due in the ultimate sum of $700, when in fact the amount claimed was in excess of the actual amount due, as shown by the verdict of the

jury which tried the issue. The amount recovered by defendant in the distress warrant proceeding was the sum of $160. In conformity with the judgment, the goods and chattels were sold at public auction where the plaintiff became the purchaser thereof. Thereupon, plaintiff brought her action to recover damages, pursuant to the provisions of section 5783 of the Code of Virginia, which reads as follows:

"If property is distrained for any rent not due, or attached for any rent not accruing, or taken under any attachment sued out without good cause, the owner of such property may, in an action against the party suing out the warrant of distress or attachment, recover damages for the wrongful seizure, and also, if the property be sold, for the sale thereof."

In the notice of motion it is alleged that as a result of the wrongful act of the defendant in distraining for excess rent, plaintiff was damaged in the sum of $10,-123.15, by reason of loss of business, loss of good will, damage to reputation and humiliation suffered.

Upon a trial of the case, the jury returned this verdict: "We the jury find for the plaintiff and assess the amount of nominal damages in the sum of $1.00 and punitive damages in the sum of Five Hundred dollars."

A motion was made by the defendant to set aside the verdict, on the ground that it was contrary to the law and evidence. The trial court being of opinion that "the evidence does not warrant a recovery of punitive damages because it fails to show that he (defendant) acted with malice," sustained the motion relative to the finding by the jury of punitive damages and entered judgment against the defendant in the sum of $1.00, the amount of nominal damages awarded by the jury.

The learned trial judge, in a written memorandum filed with the record, sets forth the facts and circumstances of the case as follows:

"Plaintiff was a beauty parlor operator. She had been the tenant of defendant's premises since some time

in the year 1930. During the depression years defendant had allowed her to occupy the premises without keeping the rent paid up to date. At one time considerable arrears had accumulated, and defendant wrote her requesting that she catch up by adding $10.00 per month to her rent payments. Neither party seems to have known exactly how the rent account stood. Defendant made efforts to have a settlement with plaintiff, he requested her to get all her cancelled checks in order that it might be determined what she owed him. The tenancy was from month to month. During the fall of 1938 plaintiff negotiated with a beauty parlor operator living and doing business in Danville for the sale of her equipment and the good-will of her business. At that time plaintiff's eye-sight had become badly impaired, and she was unable to work at her trade herself. A few months before the distress the business was doing very poorly, hardly enough to meet the overhead expenses. Plaintiff had determined to sell out. The first effort to dispose of the business fell through because the prospective purchaser in that case, apparently had more business acumen than plaintiff or the second prospective purchaser, and interviewed defendant to ascertain whether he would consent to the assignment of plaintiff's lease. At that time defendant stated that on account of plaintiff's long tenancy that he was letting her have the premises at less than their real worth, and that if a new tenant took them over he would have to charge $50.00 per month instead of $40.00 which defendant had been paying. In November or the early part of December, 1938, negotiations were had with a beauty parlor operator living in North Carolina for the sale of plaintiff's business. An agreement was made to sell the business for $1,200.00, of which plaintiff was paid $500.00 in cash. This party never came to take over the business, and did not pay the balance due under her agreement. She finally wrote plaintiff that she could not come to Danville; that if she could get her money back, the $500.00, she would like to

have it, but if not she would let it go. Thereupon plaintiff advertised her equipment for sale. She claimed that this was done in an effort to recoup for the North Carolina purchaser something on account of the amount she had paid. At this time plaintiff knew that she was indebted to defendant for rent. She offered to pay him nothing. Upon one occasion she wrote him that she was selling out, but was not leaving town, and would see him about the rent, her contention being that during the last month or two she retained possession of the premises she was looking to the purchaser to pay the rent. It was then he was advised that plaintiff was selling out her business, and after making some efforts, but without success, to see plaintiff, that defendant swore out the distress warrant. At that time, and for some time prior thereto, the business had not been operating, it was locked up and plaintiff had the keys. Upon levy of the distress plaintiff made affidavit that she was unable to give forthcoming bond; that she had a substantial defense to the distress warrant, and thereupon, defendant gave bond and had the constable take possession of plaintiff's equipment. Shortly thereafter defendant approached plaintiff's attorney in an effort to settle their accounts, but no cooperative attitude was shown and the matter dropped.

"The jury's verdict establishes that plaintiff had no going business; that her equipment was not damaged by the distress, and that she suffered no mental anguish or humiliation by reason of it. That defendant acted negligently is established, but every fact proved by the evidence negatives the thought that he acted maliciously, with evil motive. In order to recover punitive damages the burden was on her to prove by a preponderance of the evidence that defendant's act in suing out the distress was either malicious, oppressive or attended by specially aggravating circumstances.

"Assuming that defendant was guilty of gross negligence in accordance with the definition of that phrase in

the case of *Thomas* v. *Snow,* 162 Va. 654, 174 S. E. 837, he would not, as I have said above, be liable for punitive damages. Plaintiff's conduct and attitude were highly provocative. Towards an indulgent landlord she displayed the greatest lack of consideration. While owing him rent she calmly proposed to sell the property upon which he was given a lien by the statute law of Virginia, without allowing him to say yes or no. Nowhere in the testimony can I put my finger on the spot where it is established, or is fairly inferable that defendant had any motive other than to obtain what he honestly, but mistakenly, believed to be due him. The levy was not made under such circumstances that great injury would result to plaintiff. In the final analysis it was but a demand for money. It put the plaintiff to no greater inconvenience in substance than would have an action at law to recover the rent due defendant. The idea of ulterior motive is fully repelled. There is nothing in the record to show, or from which it can be inferred, that defendant could have expected any indirect gain from the levy. There was no necessity to put plaintiff out of business in order to regain possession of the premises. She could have been evicted for non-payment of rent, or given notice to quit. She was already out of business, and it does not appear that defendant desired her equipment in order that he might lease his property to any other beauty parlor operator.

■ "This being true, the question of exemplary damages should not have been submitted to the jury. It is for the court to say whether the evidence tends to establish a proper case for their allowance, and for the jury to determine in such case whether they should be allowed. See *Turk* v. *Martin,* 124 Va. [103]."

The conclusion of the trial court that plaintiff was not entitled to recover exemplary damages is fully sustained by the decisions of this court.

In *Peshine* v. *Shepperson,* 17 Gratt. (58 Va.) 472, this is said:

"When the trespass is committed without fraud, malice, oppression or other special aggravation, the object of the law, it is generally said, is to give compensation for the injury suffered, and damages are restricted to that object."

In *Norfolk and Western Railroad Co.* v. *Neely,* 91 Va. 539, 22 S. E. 367, Judge Riely, speaking for the court, said: "Actual or compensatory damages are the measure of the loss or injury sustained, while exemplary or punitive damages are 'something in addition to full compensation, and something not given as his due, but for the protection of the public.' The law awards the former only where in the unlawful act there is an absence of intentional wrong, fraud, or malice, or the act is not oppressively or recklessly committed, while the latter are given where the wrongful act is done with a bad motive, or with such gross negligence as to amount to positive misconduct, or in a manner so wanton or reckless as to manifest a willful disregard of the rights of others."

\* \* \* \* \*

" \* \* \* In Sutherland on Damages, second edition, sec. 393, p. 847, the law on this subject is thus stated: 'A tort committed by mistake, in the assertion of a supposed right, or without any actual wrong intention, and without such recklessness or negligence as evinces malice or conscious disregard of the rights of others, will not warrant the giving of damages for punishment, where the doctrine of such damages prevails.' \* \* \* "

To the same effect is the decision of this court in *Wood* v. *American National Bank,* 100 Va. 306, 40 S. E. 931.

In *Gurfein* v. *Howell,* 142 Va. 197, 128 S. E. 644, it is held that in order to recover exemplary damages in an action brought under section 5783 of the Code, the burden is upon the plaintiff to show not only that the act complained of is illegal, but that it was either malicious or

oppressive, or that it was attended by especially aggravating circumstances. See also 33 A. L. R. 384, and 81 A. L. R. 913.

Upon the whole case, we are of the opinion that there was no error committed by the trial court, and therefore, the judgment must be affirmed.

*Affirmed.*