**Dorothy M. KRAZEK,
Plaintiff–Appellant,**

v.

**MOUNTAIN RIVER TOURS, INC.,
Defendant–Appellee.**

**No. 88–1615.**

United States Court of Appeals,
Fourth Circuit.

Argued June 6, 1989.

Decided Sept. 8, 1989.

---

Ted Myron Kanner (Cathy Rider Culhane, Forman, Kanner & Crane on brief), for plaintiff-appellant.

Daniel R. Schuda (Steptoe & Johnson, on brief) for defendant-appellee.

Before ERVIN, Chief Judge, SPROUSE, Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

ERVIN, Chief Judge:

Dorothy M. Krazek appeals from a grant of summary judgment entered against her on her claim for damages resulting from the alleged negligence of Mountain River Tours, Inc. She also appeals the district court's order requiring her to indemnify the company for expenses incurred in defending her claim. Because we find that the release and indemnity agreement signed by Ms. Krazek bars her negligence action, we affirm.

## I.

In June, 1985, plaintiff-appellant Dorothy Krazek traveled from her home in Pennsylvania to Fayette County, West Virginia for the purpose of taking a white water rafting trip on the New River. This trip was conducted by the defendant-appellee, Mountain River Tours, Inc. Ms. Krazek paid the company $36.95, and signed a document entitled "Raft Trip Release and Assumption of Risk."

During the course of their rafting trip Krazek's tour group encountered a severe hail storm. The river guide, Aaron Thompson, an employee of Mountain River, ordered the rafters into the river to protect them from the hail. While in the river Ms. Krazek was swept away by the current, thrown up against rocks, and injured.

Ms. Krazek then filed the current civil action against Mountain River Tours in the United States District Court for the Southern District of West Virginia. She alleges negligence by Mountain River's employee resulting in her personal injury. The district court entered summary judgment in favor of Mountain River Tours, Inc. and ordered Ms. Krazek to indemnify the company for expenses incurred in defending against her claim. The district court based its decision on a finding that the release and indemnity agreement signed by Krazek barred a claim for damages resulting from the company's negligence.

## II.

On appeal Ms. Krazek argues that the anticipatory release and indemnification agreement she signed is insufficient to bar her action because it does not specifically waive her right to pursue a negligence action. The agreement provided:

I am aware that during the raft trip in which I am participating under the arrangement of Mountain River Tours, Inc., and its agents, employees and associates, certain substantial risks and dangers may occur, including but not limited to, hazards of traveling on a rubber raft in rough river conditions, hiking in tough terrain, accidents or illnesses in remote places without medical facilities, the forces of nature, and travel by automobile, bus or other conveyance.

In consideration of and as part payment for the right to participate in such river trips or other activities and the services and food, if any, arranged for me by Mountain River Tours, Inc., its agents, employees and associates, I have and do hereby assume all of the above risks, and release, and will hold harmless from any and all liability, actions, causes of actions, debts, claims and demands of every kind and nature whatsoever which I now have or which may arise out of or in connection with my trip or participation in any other activity. The terms hereof shall serve as a release, indemnification, and assumption of risk for my heirs, executors and administrators and for all members of my family, including any minors accompanying me.

■■■ While the West Virginia courts have never articulated a standard for interpreting anticipatory releases specifically, the general rule with respect to all exculpatory clauses is that "to relieve a party from liability for his own negligence by contract, language to that effect must be clear and definite." *Bowlby–Harman Lumber Co. v. Commodore Services, Inc.,* 144 W.Va. 239, 107 S.E.2d 602, 607 (1959). As a general rule of contract law, contracts releasing a party from liability resulting from his own negligence are looked upon with disfavor, and are strictly construed against the releasee. *See, e.g., Newport News Shipbuilding and Dry Dock Co. v. United States,* 226 F.2d 137 (4th Cir.1955). Additionally, any ambiguities in a contract will be strictly construed against the preparer. *See, Nisbet v. Watson,* 162 W.Va. 522, 251 S.E.2d 774 (1979).

Krazek argues that the general rule that an intent to absolve a party of his own negligence must be expressed "clearly and definitely" in fact requires that the parties specifically use the words "negligence" or "negligent act." As support for this argument she cites *O'Connell v. Walt Disney World,* 413 So.2d 444 (Fla.App.1982), and *Rosen v. LTV Recreational Development, Inc.,* 569 F.2d 1117 (10th Cir.1978). The courts in both of these cases applied standards virtually identical to West Virginia's "clear and definite" standard, and held that anticipatory releases signed by the users of recreational facilities were insufficient to protect the proprietors from negligence actions. We find those cases distinguishable, however, because the releases at issue there were somewhat narrower than the one at issue here.

*O'Connell* involved a minor plaintiff injured during a stampede while on a horseback ride at Disney World. Prior to taking the ride, the plaintiff's father had signed a release which provided:

I consent to the renting of a horse from Walt Disney World Co. by Frankie, a minor, and to his/her assumption of the risks inherent in horseback riding. I agree, personally and on his/her behalf, to waive any claims or causes of action which he/she or I may now or hereafter have against Walt Disney World Co. arising out of any injuries he/she may sustain as a result of that horseback riding, and I will hold Walt Disney World Co. harmless against any and all claims resulting from such injuries.

The child sued, alleging that the stampede had been caused by the negligence of a Walt Disney employee. Noting that the release, by its own terms, protected the company only from liability for injuries arising out of the dangers inherent in horseback riding, the Florida Court of Appeals held that the release did not bar a claim for negligence. The court stated:

any attempt to limit one's liability for his own negligent act will not be inferred from an agreement unless such intention

is expressed in clear and unequivocable terms.

.  .  .  .  .

In the agreement here, there is a complete absence of any language indicating the intent to either release or indemnify the defendant for its own negligence, so we will not read that language into it.

In *Rosen*, the plaintiff had purchased a season pass to a ski resort, and in so doing had agreed to the "rules and regulations" governing such passes. Among those regulations was the following stipulation:

I understand that skiing is a hazardous sport and that hazardous obstructions, some marked and some unmarked, exist on any ski area. I accept the existence of such dangers and that injuries may result from the numerous falls and collisions which are common in the sport of skiing, including the chance of injury resulting from the negligence and carelessness on the part of fellow skiers.

The Tenth Circuit held that this language did not bar the plaintiff's negligence action against the ski resort, because "it does not contain any express consent on the part of the signer to exonerate the ski area for negligent conditions ... [but only] for injuries resulting from the negligence and carelessness of fellow skiers.... Acknowledgment of the existence of such hazard and even acceptance of such danger, falls short of saying that the ski area may be negligent toward the signer free of liability." 569 F.2d at 1122–23.

█ Unlike the releases in either *Rosen* or *O'Connell,* however, the release signed by Krazek did not limit itself to injuries arising out of the dangers inherent in rafting or the negligence of her fellow rafters. We note that the dangers listed in the release following the "included but not limited to" clause in the first paragraph are all dangers inherent in the activity of white water rafting. Thus, if the release simply consisted of that paragraph, it would be insufficient to bar Ms. Krazek's negligence action. The second paragraph of the release, however, clearly waives Ms. Krazek's right to assert any claim of *any kind or nature whatsoever.* This language is obviously sufficient to waive a negligence action. To hold otherwise would create a requirement that to bar negligence claims all releases must include the words "negligence" or "negligent acts." We decline, however, to formulate a rule that requires the use of specific "magic words" in contracts such as this one.

### III.

█ Because the agreement prevents Ms. Krazek from maintaining her negligence action, it also requires her to indemnify the company for the expenses it incurred in defending this suit. The contract simply cannot be read as constituting a release for certain types of claims, but also as failing to provide indemnification for those claims.

The cases pointed to by Ms. Krazek in her argument concerning the "equitable principles" involved in indemnification are inapplicable. They all involve motions by prevailing parties for attorneys fees under § 1983, Title VII, or Rule 11.

For the reasons set forth herein, the decisions of the district court granting summary judgment in favor of Mountain River and awarding the company its expenses are hereby

AFFIRMED.