Deborah **KOCINEC**, Plaintiff,

v.

**PUBLIC STORAGE, INC.** Defendant.

No. 2:06 CV 649.

United States District Court, E.D. Virginia. Norfolk Division.

June 6, 2007.

---

Francis John Driscoll, Jr., Law Office of Frank J. Driscoll Jr. PLLC, Barry Ray Taylor, Scialdone & Taylor, Inc., Claude Michael Scialdone, Scialdone & Taylor Inc., Virginia Beach, VA, for Deborah Kocinec, Plaintiff.

Keith Patrick Zanni, McGuireWoods LLP, Norfolk, VA, for Public Storage, Inc., Defendant.

## MEMORANDUM OPINION AND ORDER

DOUMAR, District Judge.

Presently before the Court is a Motion for Partial Summary Judgment filed by Defendant Public Storage Inc. ("Defendant") against Plaintiff Deborah Kocinec ("Plaintiff") under Rule 56 of the Federal Rules of Civil Procedure. Defendant seeks to limit Plaintiff's potential recovery at trial to $5,000, pursuant to the terms of a written rental agreement executed by the parties on March 22, 2004 ("Rental Agreement"). For the reasons that follow, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment and **ORDERS** judgment in favor of Defendant's First Affirmative Defense asserting that Plaintiff's damages are contractually limited to $5,000. As Plaintiff has not alleged fraud, willful injury, or willful violation of law, she may hereinafter recover damages, if any, of no more than $5,000, in accordance with the lawful exculpatory clause contained in the Rental Agreement.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

### A. Facts

On March 22, 2004, Plaintiff entered into a written contract with Defendant to rent storage unit A04 at a Defendant's private-

ly-owned self-storage facility located at 880 Widgeon Road in Norfolk, Virginia. Plaintiff alleges, and Defendant admits, that on August 28, 2006, Plaintiff received a rental payment receipt from Defendant reflecting a credit of $6.00 and indicating that the next payment under the Rental Agreement was due and payable on September 1, 2006. Plaintiff further alleges that she sent payment to Defendant after the due date, on September 30, 2006. Apparently, the parties made no other communications until October 21, 2006, on which date Plaintiff allegedly called Defendant to provide thirty days advance notice that she would be removing her property and vacating the unit. At that time, Defendant informed Plaintiff that the property contained in her storage unit had been sold at public auction on September 25, 2006. Plaintiff contends that Defendant failed to provide her with notice of the unpaid balance and intended auction, and that such failure constitutes a breach of Defendant's statutorily imposed duties. Plaintiff initially sought money damages of $82,225.00, but now seeks $70,000.00.[1]

## B. Procedural Posture

Plaintiff filed this private cause of action against Defendant in the Circuit Court for the City of Norfolk on October 30, 2006, alleging Defendant breached its "statutorily imposed duty to notify the Plaintiff ... of her alleged unpaid rental balance" and "its intention to auction her Unit and sell her property before executing such auction and sale." Compl. ¶ 7. Defendant properly removed Plaintiff's action on November 22, 2006, pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. Defendant subsequently filed an Answer to Plaintiff's Complaint and Affirmative De-

fenses on November 22, 2006, asserting, among other defenses, that "Plaintiff's damages are contractually limited to $5,000." Pl.'s Aff. Def. ¶ 1. Defendant filed the instant motion on May 11, 2007, and Plaintiff responded in opposition on May 25, 2007. As Defendant replied thereto on May 31, 2007, this motion is ripe for disposition.

## II. ANALYSIS

### A. Motion for Summary Judgment (Rule 56)

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted where "the pleadings, depositions [and] answers to interrogatories ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The purpose of summary process is to avoid a clearly unnecessary trial," *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed.Cir.1991) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), and "it is not designed to substitute lawyers' advocacy for evidence, or affidavits for examination before the fact-finder, when there is a genuine issue for trial." *Continental Can Co.*, 948 F.2d at 1265.

In ruling on a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party. *United States v. Lee*, 943 F.2d 366, 368 (4th Cir.1991). The moving party has the threshold burden of informing the court of the basis of the motion, of establishing that there is no genuine issue of material fact, and of showing that it is entitled to judgment as a matter of law. *Celotex Corp. v.*

---

1. On December 7, 2006, Plaintiff moved to amend her Complaint to reduce the *ad damnum* clause to $70,000. The Court granted Plaintiff's motion, over Defendant's objections, on January 9, 2007.

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Castillo v. Emergency Med. Assoc.,* 372 F.3d 643, 646 (4th Cir.2004).

Once the moving party satisfies this threshold showing under Rule 56(c), the burden of production shifts to the non-moving party. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552. The non-movant must "go beyond the pleadings and by [his] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. "The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. Thus, to defeat summary judgment, the non-movant must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that a genuine issue of material fact exists. *See id.* at 324, 106 S.Ct. at 2553.

## B.  Exculpatory Agreements

■ The issue before the Court is whether a private party may contractually limit its potential liability to a counterparty in Virginia, and, if so, whether an exception to this right applies to private owners of self-storage facilities. The Court finds that parties may enter into such exculpatory agreements, and that no exception at law precludes a private self-storage facility, such as Defendant, from limiting its risk as to its customers. Moreover, the Court is unwilling to create such an exception under the circumstances of this case. Accordingly, Defendant's liability is to be limited pursuant to the exculpatory provisions contained in the Rental Agreement.

■ In Virginia, parties may limit their risk of loss through contract, as "it is apparently not against the public policy ... for one to contract against his own negligence in some situations." *Nat'l Motels, Inc. v. Howard Johnson, Inc.,* 373 F.2d 375, 379 (4th Cir.1967). "Virginia courts regularly enforce exculpatory agreements." *Trumball Invs., Ltd. v. Wachovia Bank, N.A.,* No. 1:05CV15 (GBL), 2005 U.S. Dist. LEXIS 7195, at * 10 (E.D.Va. Apr. 15, 2005); *see, e.g., Chesapeake & Ohio R. Co. v. Clifton Forge-Waynesboro Tel. Co.,* 216 Va. 858, 224 S.E.2d 317, 321 (1976) ("[W]hen a railroad is called upon to perform a service which it is not compelled to perform by the very nature of its operation as a common carrier, it may, under proper conditions, contract against its liability for negligence for the reason that it is then acting in the capacity of a private carrier."); *Peninsula Transit Corp. v. Jacoby,* 181 Va. 697, 26 S.E.2d 97, 100 ("The courts generally have recognized the right of the carrier to limit its liability for the loss of baggage by special contract ...."); *Ripley Heatwole Co. v. John E. Hall Elec. Contr., Inc.,* 69 Va. Cir. 69, 71, 2005 WL 4827398 (2005) (noting that a "contractual provision specifically limiting a party's liability" embodies "one of the essential purposes of contract law—the freedom of parties to limit their risks in commercial transactions"); *Howie v. Atl. Home Inspection, Inc.,* 62 Va. Cir. 164, 167–70, 2003 WL 23162330 (2003) (upholding a contract provision limiting a termite inspector's liability to the cost of inspection); *Phoenix Med. Elecs. Servs. v. Klamm,* 18 Va. Cir. 128, 129, 1989 WL 646529 (1989) ("Since the contract specifically limits liability to the cost of repairing or correcting the defects, claims other than for such cost are demurrable."). However, such terms limiting liability are generally disfavored, and "should be read into a contract which shows no ambiguity

on its face." *Nat'l Motels*, 373 F.2d at 379. Additionally, "a party ... may exempt itself from liability for negligence in a contract with a party on equal footing." *Gill v. Rollins Protective Servs. Co.*, 722 F.2d 55, 58 (4th Cir.1983).

■ Exculpatory clauses are typically evaluated through a three-part test.[2] "[A] defendant seeking to avoid liability under an exculpatory agreement must show (1) that the agreement does not contravene public policy, (2) that it could be readily understood by a reasonable person in the plaintiff's position, and (3) that it clearly and unequivocally releases the defendant from precisely the type of liability alleged by the plaintiff." *Hiett v. Barcroft Beach, Inc.*, 18 Va. Cir. 315, 318, 1989 WL 646461 (1989). Because the exculpatory clause contained in the Rental Agreement meets these requirements, it is valid and enforceable. Accordingly, Plaintiff may recover damages, if any, of no more than $5,000, pursuant to the unambiguous terms of the Rental Agreement.

### 1. Public Policy

While Plaintiff "concede[s] ... that Virginia law has permitted ... the right to limit risk of loss through contract," she broadly asserts that "there does not appear to be any precedent whether an owner of a Virginia self-storage facility may do so by contract to the extent that the Defendant attempts to limit its liability in the Rental Agreement." Pl.'s Opp. Mot. Summ. J. 5. Plaintiff simply concludes that, "[a]s in the case of a common carrier and a passenger, an occupant and an owner of a self-service storage facility are ... not on equal footing." *Id.* at 6. Evidence of this alleged disequilibrium, according to Plaintiff, is found in the Virginia Self-Service Storage Act, Va.Code § 55–416, *et seq.*, the statutory regime regulating self-service storage facilities in the state of Virginia, wherein the Virginia Legislature "set forth strict statutory requirements that an owner of a self-service storage facility must follow before they dispose of an occupant's personal property." Pl.'s Opp. Mot. Summ. J. 6.[3]

The Court finds no basis to conclude that Defendant possessed an unfair bargaining position over Plaintiff, nor that the exculpatory clause contained in the Rental Agreement violates public policy.

**2.** Defendant asserts that the legal criteria a court must look to in evaluating exculpatory agreements is inapposite in this case because the contract term here at issue "does *not* seek a ruling exculpating it of all liability," but only "limits damages, if any, to $5,000." Def.'s Reply Mem. Supp. Mot. Summ. J. 4. Such a distinction, between terms that limit recovery and terms that wholly preclude recovery, lacks justification. Courts within this jurisdiction have consistently referred to both provisions—those that limit liability and those that foreclose liability—as "exculpatory." *See, e.g., Georgetown Steel Corp. v. Law Eng'g Testing Co.*, No. 92–2588, 1993 WL 358770, at *2–3, 1993 U.S.App. LEXIS 23541, at *7–9 (4th Cir. Sept. 14, 1993); *Trumball Invs.*, 2005 U.S. Dist. LEXIS 7195 at *10–13. In this case, Defendant seeks to reduce Plaintiff's asserted damages by 93%, from $70,000 to, at most, $5,000. The Court is loathe to conclude that the contractual term purporting to impose such a limitation of liability does not constitute an "exculpatory clause." Accordingly, the Court will examine the contractual provision at issue in view of the law governing exculpatory agreements within this jurisdiction.

**3.** A "self-service storage facility" is defined as "any real property designed and used for renting or leasing individual storage spaces, other than storage spaces which are leased or rented as an incident to the lease or rental of residential property or dwelling units, to which the occupants thereof have access for storing or removing their personal property." Va.Code § 55–417(1). Neither party disputes the application of the Virginia Self–Service Storage Act.

"[C]ertain parties have been prohibited as a matter of public policy from contractually limiting their tort liability. Thus such a provision has been held void when contained in the contract of carriage of a common carrier, unless a reduced fare was charged; or in the contract of a public utility under a duty to furnish telephone service; or when imposed by an employer as a condition of employment." *Hiett*, 18 Va. Cir. at 318, 1989 WL 646461. Defendant is not among these designated entities—principally quasi-public in nature—for which the contractual right to limit liability is circumscribed. Moreover, there is no reason, academic or practical, to foreclose the right of a private owner of a self-storage facility to contractually limit its liability as an appropriate or necessary business practice. As Defendant asserts, "without the common sense provision limiting liability to the amount of goods one is allowed to store, companies like PSI could not afford to offer self-storage services to consumers." Def.'s Reply Mem. Supp. Summ. J. 8. Indeed, given the relatively thick market for self-storage facilities in southeastern Virginia, it is probable, if not certain, that Defendant's contractual limitation of liability yielded a lower rental cost to Plaintiff. To hold that such a transaction between two symmetrically informed parties violates public policy would be to unnecessarily frustrate the private marketplace. The Court serves no such function, absent some evidence of market failure. As Plaintiff has offered no such evidence in this case, the Court finds that the exculpatory clause contained in the Rental Agreement does not contravene public policy.

### 2. Readily Understood by a Reasonable Person

Although Plaintiff does not appear to dispute whether the exculpatory clause can be "readily understood by a reasonable person in the plaintiff's position," the Court finds that the language contained Rental Agreement can be readily understood by reasonable parties. "[A] release, like any other contractual provision, must be interpreted based on its plain and unambiguous language." *FS Photo, Inc. v. PictureVision Inc.*, 61 F.Supp.2d 473, 482 (E.D.Va.1999). To limit liability for one's own negligence, the exculpatory clause must be "clear and definite." *See Krazek v. Mountain River Tours, Inc.*, 884 F.2d 163, 165 (4th Cir. 1989).

In this case, the Rental Agreement contains two provisions that should have clearly informed a reasonable person in Plaintiff's position that Defendant's liability would be capped at $5,000. Paragraph 3 of the Rental Agreement, entitled "USE OF PREMISES AND PROPERTY AND COMPLIANCE WITH THE LAW," provides in relevant part as follows:

> Because the value of personal property may be difficult or impossible to ascertain, Occupant agrees that under no circumstances will the aggregate value of all personal property stored in the Premises exceed or be deemed to exceed, $5,000, and may be worth substantially less than $5,000.... Occupant acknowledges and agrees that the Premises and the Property are not suitable for the storage of heirlooms or precious, invaluable or irreplaceable property such as (but not limited to) books, records, writings, works of art, objects for which no immediate resale market exists, objects which are claimed to have special or emotional value to Occupant and records or receipts relating to the stored goods.

Pl.'s Mot. Summ. J. Ex. 1 ¶ 3. Plaintiff signed her initials below this paragraph to

"acknowledge[ ] that [s]he has read and understands the provisions of this paragraph and agrees to comply with its requirements."[4] *Id.* Paragraph 5 of the Rental Agreement, plainly titled "LIMITATION OF OWNER'S LIABILITY; INDEMNITY," provides in relevant part as follows:

> "Owner and Owner's Agents will have no responsibility to Occupant or any other persons for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's Agents' active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law.... Occupant agrees that Owner's and Owner's Agents' total responsibility for any Loss from any cause whatsoever will not exceed a total of $5,000."

Pl.'s Mem. Summ. J. Ex. 1 ¶ 5. Again, Plaintiff signed her initials below this paragraph in apparent recognition and understanding thereof. *Id.*

These relevant provisions of the Rental Agreement are simple, direct, and concise. They contain no complex, legal, or confusing terms that require special expertise. Accordingly, the Court finds that a reasonable person in Plaintiff's position could have readily understood the import of such exculpatory language.

### 3. Claim Within the Contemplation of the Parties

Finally, the exculpatory clause must "clearly and unequivocally release[ ] the defendant from precisely the type of liability alleged by the plaintiff." *Hiett,* 18 Va. Cir. at 318, 1989 WL 646461. On this point, Plaintiff contends that "[i]t is not clear whether Plaintiff's Breach of Contract/Virginia Self–Service Storage Act Action falls within Defendant's limitation of liability language in Paragraph 5 [of the Rental Agreement]." Pl.'s Mem. Opp. Summ. J. 4. The Court disagrees, and finds that the exculpatory clause in the Rental Agreement clearly releases Defendant from liability for losses from any cause, unless such loss was caused by Defendant's "fraud, willful injury or willful violation of law." Def.'s Mot. Summ. J. Ex. 1 ¶ 5.

In this case, Plaintiff has made no allegations, and offers no facts to support a claim, of fraud, willful injury, or willful violation of law. Perhaps in recognition of this, Plaintiff seeks to avoid summary judgment by now claiming at this late day that "[t]his issue is ... not ripe for consideration because there is still discovery that must be conducted to determine whether fraud occurred, willful injury or willful violation of law by [Defendant] in the disposition of the Plaintiff's personal property." Pl.'s Mem. Opp. Summ. J. 4. Such an assertion fails on two grounds. First, Plaintiff failed to allege fraud, willful injury, or willful violation of law in her Complaint. Second, discovery closed on April 26, 2007, pursuant to this Court's Order issued on April 19, 2007. Plaintiff's mere assertion that discovery remains does not make it so, and her unsubstantiated assertion that Defendant engaged in fraud, without evidence of any kind, lacks merit. "In order to successfully defeat a motion

---

4. In view of Plaintiff's signature, it is of no matter whether she actually read the terms of the Rental Agreement: "In the absence of fraud, duress, or mutual mistake ... an individual having the capacity to understand a written document who signs it after reading it, *or who signs it without reading it,* is bound by the signature." *First Nat'l Exchange Bank of Virginia v. Johnson,* 233 Va. 254, 355 S.E.2d 326, 329–330 (1987) (emphasis added).

for summary judgment, a nonmoving party cannot rely on mere belief or conjecture, or the allegations and denials contained in his pleadings. Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories, or other evidence to show genuine issues for trial." *Blaustein & Reich, Inc. v. Buckles,* 220 F.Supp.2d 535, 541 (E.D.Va.2002) (citations omitted). Accordingly, the Court finds that the Rental Agreement clearly releases Defendant from precisely the type of liability alleged by Plaintiff.

## III. CONCLUSION

In view of the foregoing, Defendant's Motion for Partial Summary Judgment is hereby **GRANTED**. Exculpatory agreements are routinely enforceable in Virginia, and no basis exists in fact or law to curtail Defendant's *ex ante* right to contract for limited liability. Defendant held no unfair bargaining position over Plaintiff, and is not among the class of defendants for which exculpatory agreements violate public policy. The release, interpreted based on its plain and unambiguous language, may be readily understood by a reasonable person in Plaintiff's position. Finally, Plaintiff's asserted claim was clearly within the contemplation of the parties at the time of contracting. As such, the exculpatory clause contained in the Rental Agreement prevails, and effectively limits Plaintiff's potential recovery in this action to $5,000. The Court hereby **ORDERS** judgment in favor of Defendant's First Affirmative Defense.

The Clerk of the Court is **DIRECTED** to forward copies of this Memorandum Opinion and Order to counsel of record for all parties.

**IT IS SO ORDERED.**