COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judge AtLee and Senior Judge Haley*
Argued at Fredericksburg, Virginia


RITCON, LLC, d/b/a
  ADVANCED CONTENTS RECOVERY

                                                    MEMORANDUM OPINION** BY
v.        Record No. 0416-23-4                       JUDGE JAMES W. HALEY
                                                          JULY 2, 2024
SUSAN DORAN


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              David Bernhard, Judge

              Jonathan R. Mook (Bernard D. DiMuro; DiMuroGinsberg, P.C., on
              briefs), for appellant.

              Jerome P. Friedlander, II (Friedlander & Friedlander PC, on brief),
              for appellee.


        RITcon, LLC, appeals the trial court's order finding it liable to Susan Doran for breach of

contract, negligence, gross negligence, and conversion.  RITcon contends that the trial court

erred in awarding Doran over $100,000 in compensatory damages because the contract limited

RITcon's liability to $25,177.92.  RITcon further argues that the court erred in awarding punitive

damages because there was no evidence that RITcon engaged in willful and wanton conduct or

was grossly negligent.  Doran assigns cross-error to the trial court's ruling limiting her recovery

for breach of contract.  We agree with RITcon that the trial court erred in awarding punitive

damages.  RITcon's remaining arguments and Doran's assignment of cross-error are either

waived or moot.  Therefore, we affirm in part and reverse in part.

_____

        * Judge Haley prepared and the Court adopted the opinion in this case prior to his death
on June 8, 2024.

        ** This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## I. BACKGROUND

After her condominium flooded, Doran hired RITcon to clean her personal property and store it until her unit could be repaired. She signed a contract in December 2019, which provided that RITcon's "liability [wa]s limited to the total amount paid . . . for services rendered." She also "agree[d] to release, hold harmless, defend . . . and indemnify [RITcon] from any and all damages, claims or actions that ar[o]se from . . . [the] mysterious disappearances of personal property." She paid RITcon $25,177.92 for its services.

Employees for a RITcon subcontractor packed Doran's property and wrapped it in cloth pads and cellophane until Doran "felt it was secure." RITcon photographed each item and box, noted the property's condition, and created a digital inventory. Among the items RITcon was to clean and store was an armoire with jewelry boxes inside, but neither Doran nor RITcon photographed the contents of those boxes before RITcon stored the armoire.

RITcon's chief operating officer Michael Ryan testified that RITcon generally cleaned the customer's property and stored it in one or more locked vaults with the customer's name and job number until the customer was ready for its return. Customer "property is [n]ever commingled," and there are surveillance cameras on the interior and exterior of the warehouse where the property is kept.

RITcon began returning Doran's property in May 2020.[1] Some of the property was returned damaged, some had not been cleaned, and some was not returned at all. The armoire with the jewelry boxes was not among the first items returned. When Doran asked about the missing property, a RITcon project manager told her that some of her property had been delivered to the wrong address by mistake.

---

[1] Ryan testified that it is common to return a customer's property in multiple stages.

Ryan used tracking software to locate Doran's armoire in one of RITcon's warehouses. The armoire was wrapped in a packing blanket and sealed with plastic wrap. He unwrapped the armoire and photographed the contents. Some boxes inside contained jewelry but others were empty. Ryan then rewrapped the armoire and put it on a truck to be delivered to Doran. The truck was secured with a lock that could be opened only by the truck driver. According to Doran, however, when the armoire arrived near the end of May, it was unwrapped and the jewelry was missing. Ryan interviewed employees and reviewed video but did not testify about what his investigation revealed.

In early June 2020, Frederick County Sheriff's Deputy Eric White investigated the matter at Doran's request but was "unable" to determine what happened. White interviewed RITcon's chief executive officer Ken Sellers, but the two men disagreed about how White's investigation unfolded. White testified that Sellers showed him the armoire still wrapped in cellophane and stated that Doran's jewelry "would have been inside" but "was either mistakenly delivered somewhere else or . . . was stored somewhere else and it got lost." Sellers denied that he had shown White the armoire, which he stated already had been delivered to Doran.

At trial, Doran introduced a list of all the property she claimed was broken or missing. According to that list, $53,050 in jewelry and $10,472 in other property was never returned, while $18,367 worth of property had been returned damaged.

Doran sued RITcon for breach of contract, negligence, gross negligence, fraud, and conversion. At a bench trial, the court struck Doran's fraud claim but found in her favor on her remaining claims. The court ruled that the contract's limitation clause limited RITcon's liability to $25,177.92 for breach of contract but did not apply to Doran's remaining claims. The court awarded Doran $107,066.92 in compensatory damages on her negligence, gross negligence, and conversion claims; that number represents the value of the damaged and lost property plus what

Doran had paid RITcon for its services.  Finding RITcon's conduct "shocking," the court also awarded punitive damages under Doran's gross negligence and conversion claims.  To prevent a double recovery, the final order specified that RITcon was liable for a total of $107,066.92 in compensatory damages and $321,200.76 in punitive damages.

## II.  ANALYSIS

RITcon's assignments of error boil down to two main arguments.  First, RITcon contends that the contract's limitation clause limited compensatory damages to $25,177.02.  Second, RITcon argues that the trial court erred in imposing punitive damages in the absence of gross negligence or willful and wanton conduct.

### A.  RITcon has waived its challenge to compensatory damages.

The first sentence in the contract's limitation clause provided that RITcon's "liability [wa]s limited to the total amount paid . . . for services rendered."  In the second sentence, Doran "agree[d] to release, hold harmless, defend . . . and indemnify [RITcon] from any and all damages, claims or actions that ar[o]se from" several circumstances outside RITcon's control, including the "mysterious disappearances of personal property."  RITcon argued below that the contract did not "specif[y]" the nature or scope of the limitation and therefore provided it "blanket" protection.  The trial court agreed that the limitation clause did not "say liabilities for what" but concluded that the lack of specificity meant that the limitation applied only to breach of contract.[2]  RITcon assigns error to that ruling, arguing on appeal that "the contract specifies that liability for the 'mysterious disappearance of property' is limited."

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause

---

[2] "To limit liability for one's own negligence, the exculpatory clause must be 'clear and definite.'"  *Kocinec v. Public Storage, Inc.*, 489 F. Supp. 2d 555, 560 (E.D. Va. 2007) (quoting *Krazek v. Mountain River Tours, Inc.*, 884 F.2d 163, 165 (4th Cir. 1989)).

shown or to enable this Court to attain the ends of justice." Rule 5A:18. The objection "must be both *specific* and *timely*." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc) (citing *Clark v. Commonwealth*, 30 Va. App. 406, 411-12 (1999)). A contemporaneous objection allows opposing counsel and the trial court a fair opportunity to address the challenge and prevent unnecessary appeals and retrials. *Bethea*, 297 Va. at 743-44; *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010); *Jones v. Commonwealth*, 71 Va. App. 597, 607 (2020).

RITcon waived its liability limitation argument by not arguing to the trial court that the liability limitation expressly applied to the mysterious disappearance of property. Instead, RITcon argued below that the lack of specificity in the *first* sentence of the limitation clause meant that the limitation applied broadly. On appeal, by contrast, RITcon focuses on the *second* sentence of the limitation clause and argues that the contract *did* specify the type of liability to which it applied, that is, the "mysterious disappearance of property." But the phrase "mysterious disappearance" appears nowhere in the transcript. Contrary to RITcon's assertion at oral argument that its opening brief merely expands on its argument below, RITcon's appellate argument is fundamentally different from its argument to the trial court. RITcon does not invoke any of the exceptions to Rule 5A:18, and we do not raise them sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 828 (2023) (citing *Edwards*, 41 Va. App. at 761). Accordingly, we affirm the trial court's judgment that the contract limitation applied to Doran's contract claim only.

The trial court awarded Doran $107,066.92 in compensatory damages for negligence, gross negligence, and conversion but specified that she could recover that value only once. When a court makes one or more alternative holdings, an appellant's failure to challenge an

- 5 -

alternative holding waives "any claim of error with respect to the court's decision on that issue." *Neff v. Commonwealth*, 63 Va. App. 413, 416 n.3 (2014) (quoting *Johnson v. Commonwealth*, 45 Va. App. 113, 116 (2005)). RITcon does not challenge its liability for negligence or conversion, and it has waived its challenge to the compensatory damages awarded for those claims. Accordingly, we affirm the trial court's award of $107,066.92 in compensatory damages.[3]

### B. The trial court erred by awarding punitive damages.

We examine the sufficiency of the evidence following a bench trial "in the light most favorable to . . . the prevailing party at trial" and will not reverse the trial court's judgment unless it "is plainly wrong or without evidence to support it." *Moncrieffe v. Deno*, 76 Va. App. 488, 496 (2023) (alteration in original) (quoting Code § 8.01-680); *see also Xspedius Mgmt. Co. of Va., L.L.C. v. Stephan*, 269 Va. 421, 424-25 (2005) (applying the same standard to a jury's award of punitive damages but finding the evidence insufficient to support punitive damages).

The Supreme Court has "repeatedly stated that an award of punitive damages is not favored . . . and should be awarded only in cases involving the most egregious conduct." *Horn v. Webb*, 302 Va. 70, 81 (2023) (quoting *Bowers v. Westvaco Corp.*, 244 Va. 139, 150 (1992)). "Where there is no 'fraud, malice, oppression, or other special motives of aggravation, damages by way of punishment cannot be awarded, and compensatory damages only are permissible.'" *Id.* (quoting *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 637 (2019)).

Before punitive damages are permissible, there must be proof of "willful and wanton" conduct, that is, proof that the defendant acted "in conscious disregard for another's rights, or

---

[3] We need not address Doran's skeletal argument that the trial court erred by limiting her contract recovery because accepting that argument would not affect the relief ordered. *See Chaffins v. Atl. Coast Pipeline, LLC*, 293 Va. 564, 571 (2017) ("It is not the office of courts to give opinions on abstract propositions of law, or to decide questions upon which no rights depend, and where no relief can be afforded." (quoting *E.C. v. Va. Dep't of Juvenile Justice*, 283 Va. 522, 530 (2012))).

with reckless indifference to consequences" of which the defendant was aware. *Doe v. Isaacs*, 265 Va. 531, 535 (2003) (quoting *Woods v. Mendez*, 265 Va. 68, 76-77 (2003)). Put another way, the defendant must have been aware "that [its] conduct probably would cause injury to another." *Id.* "Willful and wanton negligence requires more than inattention and neglect." *Doe v. Baker*, 299 Va. 628, 653 (2021). "Negligence conveys the idea of heedlessness, inattention, inadvertence; willfulness and wantonness convey the idea of purpose or design, actual or constructive." *Thomas v. Snow*, 162 Va. 654, 660 (1934).

There was no evidence of willful and wanton conduct in this case. To find otherwise, the trial court relied primarily on the condition of Doran's property.[4] No evidence established how Doran's property came to be lost or damaged. Virginia courts may sometimes presume negligence when a bailee fails to return a bailor's property in an adequate condition. *Volvo White Truck Corp. v. Vineyard*, 239 Va. 87, 92 (1990). But we know of no case—and Doran cites none—presuming willful and wanton negligence based merely on the quantum of damage to the bailor's property. There is no evidence that RITcon had any animosity or malice toward Doran. There is no evidence that RITcon knew of circumstances that could cause the damage and chose to ignore them. Rather, the record establishes that the items were wrapped, photographed, and inventoried. In short, the evidence does not establish a conscious disregard

---

[4] The trial court was also concerned that RITcon gave Doran "short shrift" when she complained about the loss. To justify punitive damages, however, the offending conduct must have "produced the injurious result." *Curtis v. Highfill*, 298 Va. 499, 506 (2020) (quoting *Snow*, 162 Va. at 660). Regardless of whether RITcon's response to the loss was satisfactory, that response plainly did not produce the loss that had already occurred.

for Doran's rights or a reckless indifference to the consequences of its actions. Indeed, the cause of the damage remains unknown.[5]

Compensatory damages are a recompense for a plaintiff's injury. *Sch. Bd. of Newport News v. Commonwealth*, 279 Va. 460, 470 (2010). As such, courts measure compensatory damages based on the *result* of a defendant's conduct. *Evans v. Schuster*, 178 Va. 61, 67 (1941) ("[C]ompensatory damages are the measure of the loss or injury sustained."). Punitive damages, by contrast, are designed to punish the *conduct itself*, and only "the most egregious conduct." *Horn*, 302 Va. at 81. Punitive damages are improper here because, even when viewed in the light most favorable to Doran, the evidence did not establish that RITcon caused the injury by willful and wanton conduct. Accordingly, we reverse the trial court's award of punitive damages.[6]

## III. CONCLUSION

We affirm the trial court's award of $107,066.92 in compensatory damages. We reverse the trial court's award of $321,200.76 in punitive damages.

*Affirmed in part, and reversed in part.*

---

[5] That RITcon may have delivered some of Doran's property to the wrong location evinces negligence but not willfulness and wantonness. *See Chesapeake & O. R. Co. v. Martin*, 283 U.S. 209, 211, 220 (1931) (characterizing delivery of potatoes to the wrong warehouse, where they spoiled, as negligent).

[6] In light of our rulings, we need not address RITcon's argument that the evidence failed to prove gross negligence. As stated previously, the court's unchallenged negligence and conversion findings support the compensatory damages; it is irrelevant whether gross negligence provided an alternative reason for awarding those damages. And our reversal of punitive damages leaves no further relief to be granted.